BELGIAN AMERICAN MERCANTILE CORPORATION, Plaintiff,

v.

DE GROEVE–MARCOTTE & FILS, Defendant.

No. 76 Civ. 4480 (CHT).

United States District Court,
S. D. New York.

July 8, 1977.

Finley Kumble, Wagner, Heine & Underberg, New York City, for plaintiff; Kenneth J. Gould, New York City, of counsel.

Salon, Bloustein & Raybin, New York City, for movant FNB Financial Co.; Joel Salon, New York City, of counsel.

TENNEY, District Judge.

This is an action by Belgian American Mercantile Corporation ("Belgian American") to recover unpaid commissions for services allegedly performed on behalf of the defendant, De Groeve-Marcotte & Fils, a Belgian textile company now said to be bankrupt. On October 12, 1976 the plaintiff sought and obtained an order of attachment against certain debts allegedly owed to the defendant by Hamilton Adams Imports Ltd. The attachment served the dual purposes of obtaining quasi in rem jurisdiction over the defendant and of securing satisfaction of a judgment ultimately to be entered against the defendant. The plaintiff was awarded a default judgment on December 8, 1976, the defendant not having appeared, answered or moved with respect to the complaint, and the matter was referred to a magistrate for an inquest on damages. Shortly thereafter, FNB Financial Company ("FNB") appeared in the action and obtained an order to show cause why the attachment should not be vacated on the ground that the debts alleged to be owing to the defendant were in fact owing to FNB, the debts having been assigned by the defendant to FNB for valuable consideration. For the reasons stated below, FNB's motion to vacate the attachment is granted, and the default judgment entered by this Court is vacated.

The plaintiff opposes FNB's motion on two grounds. First, the plaintiff argues that FNB has no standing to make its motion since FNB has not sought intervention under Rule 24 of the Federal Rules of Civil Procedure ("Rules"). Second, the plaintiff contends that FNB has failed to sustain its burden of proving that the debts in question were owing to it rather than to the defendant.

### FNB's Standing

■ The plaintiff's procedural objection raises an interesting question of the relation between federal and state law in the area of attachments. It is clear that with respect both to attachments to obtain quasi in rem jurisdiction and to attach-ments to secure satisfaction of a judgment, this federal district court must look to the law of the state of New York. Regarding quasi in rem jurisdiction, Rule 4(e) provides:

"Whenever a statute or rule of court of the state in which the district court is held provides . . . (2) for service upon or notice to [a party not an inhabitant of or found within the state] to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may . . . be made under the circumstances and in the manner prescribed in the statute or rule."

The Advisory Committee on Rules stated that the purpose of this language was to "permit the institution of original Federal actions against nonresidents through the use of familiar State procedures by which property of these defendants is brought within the custody of the court and some appropriate service is made upon them." Notes of Advisory Committee on Rules, Rule 4(e), 28 U.S.C.A. 98 (Supp.1977).

Rule 64, which governs attachment for security purposes, states in pertinent part:

"At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. . . ."

■ In this case, the plaintiff obtained its attachment under Section 6201 of the Civil Practice Law and Rules of New York ("N.Y.C.P.L.R."). Similarly, FNB also has been proceeding under a related section of

the same state law, specifically N.Y.C.P. L.R. § 6223, which provides in part:

> "Prior to the application of property or debt to the satisfaction of a judgment, the defendant, the garnishee or *any person having an interest in the property or debt* may move, on notice to each party and the sheriff, for an order vacating or modifying the order of attachment. . . ." (Emphasis added).

The question presented is whether that part of the state procedure which allows nonparties to move with respect to the attachment should be excised from the state attachment procedure otherwise used by the federal court in favor of requiring more formal intervention under Rule 24. This Court concludes that, under the circumstances of this case, adherence to the state procedure is sufficient to bring the motion to vacate before the Court.

■ The purpose of the total incorporation of state attachment procedure into federal law was, as stated above by the Advisory Committee, to permit the use of "familiar State procedures" with respect to attachment. Thus, most federal courts faced with an ostensible conflict between state procedure and the Federal Rules of Civil Procedure have held that the state law should govern. *See, e. g., Carroll v. Manufacturers Trust Co.,* 202 F.2d 714, 715 (2d Cir. 1953) (New York law found to control over Rule 6(b) with respect to extensions of time); *Edner v. Mathews,* 44 F.Supp. 873, 874 (W.D.Pa.1942) (attachment found to have been extinguished upon death of defendant by virtue of continued application of Pennsylvania law to the attachment notwithstanding Rule 25(a)(1) concerning substitution).

■ Moreover, this Court will be required to look to section 6223 of the N.Y.C.P.L.R. and to New York cases interpreting it to determine whether the attachment should be vacated. As the United States Court of Appeals for the Second Circuit stated in *Bernstein v. Van Heyghen Freres S.A.,* 163 F.2d 246, 248 (2d Cir.), *cert. denied,* 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357 (1947), "it is the New York law which determines the validity of attachments in the district court." District courts have looked specifically to section 6223 or cases thereunder for the applicable standard. *Kend v. Chroma-Glo, Inc.,* 51 F.R.D. 547, 548 (D.Minn.1970), *aff'd,* 478 F.2d 198 (8th Cir. 1973) (transferee court applying New York law); *B. B. Weit Printing Co. v. Frances Denney, Inc.,* 300 F.Supp. 405, 408 (S.D.N.Y. 1969) (citing New York case decided under section 6223). Thus, it would be anomalous to apply section 6223 in this regard while finding that portion of the same section which would allow FNB to move to vacate the attachment to be inappropriate for use in the federal court.

■ Finally, to require formal adherence to Rule 24 under the present circumstances would be to elevate form over substance and possibly to work an injustice. While FNB did not style its Order To Show Cause a "petition" as required by Rule 24(c) and while FNB failed to accompany the order with "a pleading setting forth the claim or defense for which intervention is sought," the papers filed by FNB fulfill the substance of Rule 24's requirements. FNB gave adequate notice to the plaintiff that it wished to assert opposition to the attachment, and clearly stated the ground on which that opposition was based—that the debt was owed to FNB rather than to the defendant. The Second Circuit has held that in the face of strong circumstances the formal requirements of Rule 24 need not be insisted on. *Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F.2d 1072, 1074 n. 1 (2d Cir. 1972). Certainly it would have been advisable for FNB to have sought intervention, particularly in this case where intervention as of right would seem to be clearly warranted. *See, e. g., Krippendorf v. Hyde,* 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145 (1883); *3B Moore's Federal Practice* ¶ 24.09[2], at 24–225, ¶ 24.09–1[2], at 24–301 (2d ed. 1977). However, this Court will not consider noncompliance with the strict requirements of Rule 24(c) to bar consideration of FNB's motion on the merits.

*Motion to Vacate*

Under N.Y.C.P.L.R. § 6223 the burden falls on movant to prove that the attachment should be vacated. *B. B. Weit Printing Co. v. Frances Denney, Inc., supra,* 300 F.Supp. at 408; *George A. Fuller Co. v. Vitro Corp. of America,* 26 A.D.2d 916, 274 N.Y.S.2d 600 (1st Dep't 1966); *Cocoline Chocolate Co. v. Hillside Enterprises, Inc.,* 45 Misc.2d 594, 257 N.Y.S.2d 444 (Sup.Ct. Kings Cty. 1965). In this case, FNB must demonstrate that "the defendant has no interest [in the property in question], either vested or not vested, which is capable of being aliened." *Cawley v. Clarke,* 278 App. Div. 828, 104 N.Y.S.2d 230, 231 (2d Dep't 1951). In ruling on this question, the Court may consider "not only the papers originally submitted on the application for the warrant of attachment but the affidavits and exhibits submitted on the present motion to vacate." *Worldwide Carriers, Ltd. v. Aris S. S. Co.,* 301 F.Supp. 64, 67 (S.D.N.Y.1968).

In support of the plaintiff's contention that the garnishee, Hamilton Adams Imports Ltd., owed a debt to the defendant, Belgian American has submitted an affidavit of its president and copies of the invoices representing the debt. The affidavit states:

"As a result of a contract for which plaintiff acted as the broker, plaintiff is aware that Hamilton Adams Imports Ltd., 104 West 40th Street, New York, New York owes defendant the sum of 673,799 Belgian francs (or about $17,956.74). Copies of the invoices representing these accounts receivable are annexed as Exhibit 'E.' Upon information and belief these accounts have not been paid and are presently due and owing to defendant." Affidavit of Robert J. Savoye, sworn to October 11, 1976, ¶ 7.

In response, FNB has submitted a number of affidavits and documents which demonstrate that the accounts in question were assigned to a Belgian factoring company, International Factors Belgium S.A. ("International"), for valuable consideration prior to the attachment of the debt by the plaintiff and that International in turn assigned its rights in the debt to FNB. The affidavits of John Gielen and Oscar De Bouvere, director and manager respectively of International, and of Jacques Custers, solicitor for International, state that the defendant transferred its rights in the invoices to International according to the procedure established by the terms of the Belgian law of 25th October 1919 amended by the Belgian law of 31st March 1958. This transfer is accomplished by placing an endorsement on the copy of the invoice which is given to the factoring company and need not be placed on other copies of the invoices, such as those submitted by the plaintiff on its order of attachment. Also submitted by FNB is the affidavit of its vice president stating that the accounts in question were transferred to FNB by International in accordance with an agreement between them. These sworn statements of persons with personal knowledge of all the relevant facts are supported with a number of documents: copies of the invoices shown to be stamped on the back with International's stamp; further copies of the invoices, all but one of which bear the legend:

"This account has been transferred to FNB Financial Company P. O. Box 18:6, Boston, Mass. 02105 to whom payment must be made and notice of all claims must be given." Exhibit A to Affidavit of Joel Salon, sworn to December 17, 1976

(the other bears a somewhat different assignment legend); statements of account indicating the sums paid by International to the defendant in exchange for the invoices; letters of transfer from International to FNB for each of the invoices in question.

This evidence is both significant and essentially uncontroverted. In its "Sur-Reply Affirmation" the plaintiff relies mainly on its contention that FNB lacks standing and otherwise questions only whether the evidence submitted by FNB establishes that "De Groeve conveyed its interest in the receivables for adequate consideration." Affirmation of Kenneth J. Gould, dated February 25, 1977, ¶ 4. This point would not seem to be in doubt, however. The letter of Jacques Custers, attached to the

February 16 affidavit of Joel Salon, states that the statements of account prove "that the above mentioned invoices were posted by S.A. International Factors Belgium and paid to S.A. De Groeve Marcotte." The statements of account are attached to the affidavit. The further affidavit of Custers, discussed above, makes essentially the same statement.

Thus the Court concludes that FNB, by presenting sworn statements on personal knowledge and documentary evidence essentially uncontroverted by the plaintiff, has met its burden of showing that the defendant had no interest in the property attached and that in fact the debt was owing to FNB by virtue of the assignment of the debt to International and then to FNB. Accordingly, the motion to vacate the attachment is granted. Costs will be awarded to FNB against the plaintiff but will not include FNB's attorneys' fees. Furthermore, the default judgment, which was based solely on the plaintiff's assertion of quasi in rem jurisdiction over the defendant through this attachment, must likewise be vacated.

Submit order in conformity herewith.