Claire NELSON, Plaintiff,

v.

Samuel N. GREENSPOON, and Eaton, Van Winkle and Greenspoon, a partnership, Defendants.

No. 83 Civ. 7952 (SWK).

United States District Court, S.D. New York.

Sept. 11, 1984.

Morris Pottish, New York City, for plaintiff.

Olnick, Boxer, Blumberg, Lane & Troy by Andrew N. Krinsky, New York City, for defendant Samuel N. Greenspoon.

Richenthal, Abrams & Moss by Arthur Richenthal, New York City, for proposed intervenor Hosiery Corp. of America.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court in an unusual posture: a corporation, Hosiery Corporation of America ("HCA"), seeks to intervene in this dispute between its erstwhile president, Claire Nelson, and

her attorney, Samuel N. Greenspoon, concerning Greenspoon's representation of Nelson, in order to preserve its claims to a purported attorney-client privilege surrounding various documents generated by Greenspoon, also HCA's attorney, copies of which were sent to Nelson during her tenure with HCA and remain in her possession to date. HCA seeks an order directing Nelson to turn over all of the documents, and any copies thereof, and prohibiting her from producing or disseminating those documents in any way. For the reasons stated below, HCA is granted leave to intervene, but its motion to restrain plaintiff and replevy the documents is denied.

—BACKGROUND—

HCA is a closely-held Delaware corporation with its principal place of business in Pennsylvania. HCA is primarily engaged in selling hosiery through the mails.

Plaintiff Claire Nelson, along with her late husband Jules, had been the sole and joint owners of the outstanding shares of HCA. Claire Nelson also was President, or executive officer in charge of operations, of HCA for several years prior to the end of 1980. On December 2, 1980, Claire and Jules Nelson entered into a separation agreement. On the same date, Claire entered into an agreement with HCA whereby HCA would pay Claire $1,250,000, over the course of ten years, in redemption of her interest in the corporation.

Claire was represented in the preparation of these agreements by defendant Greenspoon. Greenspoon is a member of the bar of the State of New York. He had, before and after the preparation of these agreements, represented Claire in personal matters. Additionally, Greenspoon had at times represented Jules in personal matters. He also has been HCA's general counsel since 1977. Greenspoon was the only attorney involved in the preparation of these agreements.

In or about March, 1981, Claire Nelson's employment by HCA was terminated. She has not been affiliated with HCA since that time.

In or about December, 1981, Jules Nelson instituted an action against Claire in New York State Supreme Court. The substance and merits of that action are irrelevant for purposes of this motion. Claire counterclaimed in that action to set aside the agreements. On November 19, 1983, Jules Nelson died, slowing the progress of the Supreme Court action. That action is still pending.

Jules Nelson's will was filed for probate in Surrogate's Court, New York County. Greenspoon and Helen Gioulis (not a party herein) were appointed preliminary executors. The eligibility of Greenspoon for permanent letters testamentary is being contested in Surrogate's Court.

In November, 1983, Claire instituted this action against Greenspoon alleging malpractice and conversion. Discovery in this action had been proceeding apace. Then, in the course of discovery, Claire produced copies of letters written by Greenspoon. Greenspoon maintained that the documents were privileged as between HCA and its attorney, but responded to questions concerning them.

HCA[1] then brought on the instant motion by Order to Show Cause dated May 11, 1984. In support of its motion, HCA submitted an affidavit by Arthur Richenthal, dated May 7, 1984 ("Richenthal Aff."). Attached as exhibits to the affidavit were copies of several documents which Claire Nelson has produced during discovery herein as to which HCA claims an attorney-client privilege applies. By this motion, HCA seeks the return of all privileged documents (and any copies thereof) in Claire's possession and the suppression of those privileged documents already produced by Nelson in this action.

---

**1.** HCA is represented here by the attorney who represents Greenspoon in the Surrogate's Court proceeding.

—DISCUSSION—

 Plaintiff raises several procedural arguments in opposition to HCA's motion which must be dealt with first. Initially, plaintiff claims that HCA is a non-party with no standing to move in this action. Admittedly, HCA's moving papers do not explicitly seek leave to intervene, but rather indicate that HCA appears "for [a] specific and limited purpose." Richenthal Aff., ¶ 2. However, on June 7, 1984, HCA addressed a letter to the Court requesting that the Court construe the motion as including a request to intervene. The Court will, therefore, construe this motion as one to intervene.

 Plaintiff next argues that HCA's papers are insufficient to support a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. Rule 24(c) provides in relevant part, that "[a] person desiring to intervene shall serve a motion to intervene ... [which] shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." HCA has not met the formalities required by Rule 24(c); however, denying its motion on that ground would exalt form over substance. See Belgian American Mercantile Corp. v. De Groeve-Marcotte & Fils, 433 F.Supp. 1098, 1101 (S.D.N.Y.1977). In Belgian American, as in this case, the movant, a non-party, had acted by Order to Show Cause for some relief and had not specifically styled its request a petition to intervene. In that case, as in this one, the relief sought was clearly spelled out in the Order to Show Cause, albeit not in the form of a pleading. Noting that the "Second Circuit has held that in the face of strong circumstances the formal requirements of Rule 24 need not be insisted on" (citing Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072, 1074 n. 1 (2d Cir.1972)), the court held that "noncompliance with the strict requirements of Rule 24(c)" would not preclude intervention

and a determination of the intervenor's motion on the merits. 433 F.Supp. at 1101. This Court feels that that is the proper course to take in this instance as well.

 Plaintiff also argues that the Court would be divested of subject matter jurisdiction if HCA were permitted to intervene because HCA is not of citizenship diverse from that of plaintiff. If HCA's intervention is as of right, pursuant to Fed.R.Civ.P. 24(a), then this Court is empowered to hear this case irrespective of HCA's citizenship under the doctrine of ancillary jurisdiction. See Formulabs, Inc. v. Hartley Pen Co., 318 F.2d 485 (9th Cir.1963).

Rule 24(a) provides, in relevant party, as follows:

Upon timely application anyone shall be permitted to intervene in an action:

* * * * * *

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

 HCA seeks to intervene here to assert its purported attorney-client privilege to documents being made a subject of this action. This Court finds that the provisions of Rule 24(a)(2) do apply to this situation: to wit, the client claims an interest, an attorney-client privilege, in documents which are the subject of the action,[2] and the existing party, the attorney, is not actively protecting that privilege. See In re Katz, 623 F.2d 122 (2d Cir.1980).

HCA claims that various documents in Claire Nelson's possession are HCA documents, subject to the attorney-client privilege, and that she should not be permitted to produce, or otherwise use, such privileged documents in this lawsuit. The pa-

**2.** If these documents relate solely to Greenspoon's representation of HCA, as HCA contends, this Court is at a loss to understand how they are relevant to, or the subject of, this ac-

tion. Be that as it may, Nelson has produced them, and questioned Greenspoon about them; therefore, plaintiff has essentially made them the subject of this action at this stage.

rameters of the claimed privilege in this diversity action are defined by state law. Fed.R.Evid. 501. The attorney-client privilege in New York is governed by section 4503 of the New York Civil Practice Law and Rules ("CPLR"); however, it is deeply rooted in common law. *See People v. O'Connor*, 85 A.D.2d 92, 94, 447 N.Y.S.2d 553, 556 (4th Dep't 1982).

The existence of such a privilege is based upon a policy of encouraging openness and full disclosure between a client and his or her attorney. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Priest v. Hennessy*, 51 N.Y.2d 62, 67–68, 431 N.Y.S.2d 511, 513–514, 409 N.E.2d 983, 985–986 (1980). Nonetheless, the application of the privilege serves to exclude reliable evidence and, often, to block the truth-determining processes of the courts. *Priest*, 51 N.Y.2d at 68, 431 N.Y.S.2d at 514, 409 N.E.2d at 986; *In re Jacqueline F.*, 47 N.Y.2d 215, 219, 417 N.Y.S.2d 884, 886–87, 391 N.E.2d 967, 969–70 (1979). In order to minimize the intrusion of the privilege upon the ascertainment of truth, the scope of the privilege must be, and is, confined to the narrowest possible ambit which will still achieve the purpose of full disclosure. *Priest*, 51 N.Y.2d at 68, 431 N.Y.2d at 514, 409 N.E.2d at 986; *see also In re Bekins Storage Co.*, 118 Misc.2d 173, 177, 460 N.Y.S.2d 684, 690 (Sup.Ct.N.Y.Co.1983).

The specific formulation of the privilege, as set out in section 4503 of the CPLR, provides, in relevant part, as follows:

> Unless the client waives the privilege, ... any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney ... and the client in the course of professional employment, shall not ... be allowed to disclose such communication.

N.Y.Civ.Prac.Law § 4503 (McKinney 1963) (Supplementary Pamphlet 1964 to 1983).

Whether or not that privilege covers the communications here at issue must be resolved by this Court, but the burden of establishing the existence of an attorney-client privilege applicable to these particular circumstances is upon HCA, the party claiming the privilege. *See Priest*, 51 N.Y.2d at 69, 431 N.Y.S.2d at 514, 409 N.E.2d at 986; *see also Katz*, 623 F.2d at 125; *United States v. Demauro*, 581 F.2d 50, 55 (2d Cir.1978).

HCA argues initially that these communications were made during the course of an attorney-client relationship, and there appears to be no dispute about this.[3] HCA further argues that these corporate communications are confidential, urging baldly that "[c]onfidentiality exists where the communications sought to be protected were made for the purposes of either receiving or giving legal advice." HCA's Memorandum in Support of Motion, p. 4. HCA also argues baldly that it has not waived its privilege, and that Nelson possessed these documents without HCA's knowledge. These last three contentions are hotly disputed.

Treating the last argument first, it is beyond peradventure that HCA "knew" Nelson obtained these documents,[4] since she is named on the documents (or at least most of them) as an addressee, either of the original or of a copy. Nelson argues, therefore, that section 4503, by its terms, is inapplicable. HCA argues in response that Nelson received these documents solely in her capacity as corporate officer. As such, HCA argues, Nelson's receipt was the equivalent of HCA's receipt, so the documents remained privileged (to the same extent that they were privileged to begin with). HCA argues further that it did not "know" that she retained the documents after she left her employ there, and that such retention was wrongful and did not divest HCA of its claimed privilege. Nelson, on the other hand, responds that these documents were addressed to her personally, not as corporate officer, and/or that

---

3. Although, as discussed below, it is not always clear who the client was.

4. At least insofar as a corporation can "know" anything.

HCA knew she retained them, at least because Jules (the sole remaining shareholder, chief officer, and director of HCA) shipped them to her and knew she had them. HCA argues that Jules' knowledge of, or even complicity in, Nelson's retention of the documents is irrelevant because he did not have the authority to waive HCA's privilege.[5]

The Court has attempted to parse these bickering thrusts and parries in an effort to determine the applicability of section 4503. It is essential that the general nature of the relationship among the four parties involved—Claire, Jules, HCA and Greenspoon—be understood. HCA is, or was a very closely held corporation. Claire and Jules were the sole shareholders, and were the principal officers, of the corporation. HCA was, in sum, very much a "Mom and Pop" operation—the alter ego of Claire and Jules. Greenspoon, was the attorney for all three. He handled the Nelsons' personal affairs as well as their business affairs. The distinctions that HCA makes now, between Claire Nelson, as corporate officer, and Claire Nelson, as individual, and between Claire Nelson and HCA, were not so neatly defined in fact.[6]

■ A perusal of the documents as to which HCA claims its privilege[7] indicates that Greenspoon quite simply did not always distinguish between Claire, the individual, and HCA. In other words, several of the documents were addressed to personal matters as well as corporate ones. For example, document D 220 discusses property owned by Jules and Claire Nelson in the context of a broader discussion of corporate matters. Likewise, document D

241 refers to life insurance (presumably personal) amidst corporate matters. Document D 394 refers to Claire's potential criminal exposure from HCA's activities. These are but examples of the *personal* information discussed in what seem to be predominantly corporate documents. Since these documents discuss Claire's personal matters, I find that she is properly in possession of them.

■ Moreover, the Court finds that some of these documents are not confidential, and therefore are not privileged. HCA's bald assertion that a document is automatically confidential if legal advice is sought or provided in the document is not a correct statement of the law. *See Herbert v. Lando,* 73 F.R.D. 387, 399 (S.D.N.Y.), *remanded on other grounds,* 568 F.2d 974 (2d Cir.1977), *rev'd and remanded on other grounds,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). There, the court stated, "[n]or is privileged status automatically conferred by the fact that the memorandum may express an opinion of counsel; opinions are privileged only to the extent that they are based upon, and consequently reveal, information furnished by the client *in confidence." Id.* (emphasis added). A communication is not confidential if it involves third parties. *See, e.g., People v. Belge,* 59 A.D.2d 307, 308, 399 N.Y.S.2d 539, 540 (4th Dept.1977) (*quoting United States v. United Shoe Mach. Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950) ("without the presence of strangers")); *Randy Int'l Ltd. v. Automatic Compactor Corp.,* 97 Misc.2d 977, 412 N.Y.S.2d 995 (Civ.Ct. Queens Co. 1979). Thus, documentary communications to or from third parties are not confidential. Likewise, documenta-

5. HCA makes this argument through the affidavit of its attorney without any citation or support in case law or in corporate records. The Court, however, need not address this contention here.

6. The other courts involved in these tripartite proceedings have apparently held to the same effect with respect to the blurred distinction between Jules and HCA.

7. The Court notes that HCA has not shown the same vigor with which it *argues* its desire to

keep these documents privileged and confidential in the way it actually *treats* those documents. HCA submitted copies of the very documents it claims are privileged to this Court as exhibits in the publicly filed order to show cause. HCA did not make any effort to have those documents sealed from public access. Since I find that the documents are not privileged, I need not determine whether HCA unwittingly waived its privilege by filing these documents in this manner.

ry communications are not confidential if copies thereof are sent to third parties. Furthermore, information obtained from third parties is not privileged. *See Bekins Storage Co.*, 118 Misc.2d at 179, 460 N.Y.S.2d at 691. Document D 220 as to which HCA claims a privilege, was addressed to Mr. Terry Arch of Touche, Ross & Co., and therefore is not privileged. A copy of document D 271 was sent to Ms. Dolores Geraghty and therefore is not privileged.[8] Plaintiff's Exhibits 37 and 38 (part of Exhibit 6 to the Order to Show Cause herein) contain information obtained from Mr. Arch, and refer to ongoing communications with Mr. Arch regarding the subject of the documents; therefore, these are not confidential. *See J.P. Foley & Co., Inc. v. Vanderbilt*, 65 F.R.D. 523, 526 (S.D.N.Y.1974). These are but examples of the several documents that are not confidential, and therefore not privileged for this reason as well.

▮ Finally, HCA has not cited a single example of the attorney-client privilege being used to regain possession of purportedly privileged documents. Given the need to *limit* the scope of the privilege, this Court will not countenance HCA's attempt to create new affirmative applications for the privilege. *Cf., Liberty Mut. Ins. Co. v. Engels*, 41 Misc.2d 49, 51, 244 N.Y.S.2d 983, 986 (Sup.Ct. Kings Co.1963) (privilege is a shield, not a sword), *aff'd*, 21 A.D.2d 808, 250 N.Y.S.2d 851 (2d Dep't 1964).

In sum, HCA has failed to carry its burden of showing that these documents are privileged. They appear to properly be in Claire Nelson's possession, and shall remain so. HCA's motion to intervene is GRANTED and its motion for suppression and return of the documents is DENIED. Preparation for trial is to continue apace.

SO ORDERED.

8. The Court does not know the nature of the relationship between Ms. Geraghty and HCA. Ms. Geraghty may be a corporate insider such that the communication remained confidential; however, HCA certainly did not sustain its burden of establishing that fact, if it is the case.

The same is true of documents addressed to Mr. Uri Shoham, except in the case of those documents, since they were addressed to Mr. Shoham at HCA's address, the Court was willing to assume the insider status of Mr. Shoham in spite of HCA's failure of proof.