OPINION OF THE COURT
Harold J. Rothwax, J.
A New York County Grand Jury, investigating allegations of fraud in the making of multimillion dollar loans by officers of a major New York bank, has subpoenaed numerous documents in the files of a law firm, stored on the *174 premises of Bekins Record Storage, Inc. Petitioners are two former clients of the law firm. They have moved to quash the subpoena on grounds that the documents sought are privileged from disclosure as attorney’s work product (CPLR 3101, subd [c]; CPL 240.10, subd 2); as confidential attorney-client communications (CPLR 4503, subd [a]); and/or as personal incriminatory papers protected by the privilege against self incrimination (US Const, 5th Arndt). The attorneys are also represented in these proceedings an,d assert the work-product privilege on their own behalf (CPLR 3101, subd [c]). The District Attorney, representing the Grand Jury in this matter, does not dispute that the petitioners (who will be referred to as A and B in this opinion so as to protect the confidentiality of the Grand Jury proceeding) individually established a legitimate client-attorney relationship with the law firm. There is an issue as to joint representation which will be addressed in due course.
The court has inspected 43 files containing numerous documents as to which petitioner A claims one or more privileges, and 17 files as to which petitioner B has made similar claims. The burden of establishing that the documents are privileged is on the petitioners. (Koump v Smith, 25 NY2d 287, 294.)
attorney’s work product
The petitioners assert that many of the subpoenaed documents are the work product of the attorneys and as such are absolutely exempt from Grand Jury subpoena. In particular, the work-product exemption is asserted in regard to handwritten notes and drafts of documents such as partnership agreements, made by the attorneys. Petitioners rely primarily upon Federal precedent to support the application of the work-product exemption in the Grand Jury context. (See, e.g., Matter of Grand Jury Investigation, 599 F2d 1224.)
The work-product exemption in New York is codified in the civil (CPLR 3101, subd [c]) and criminal (CPL 240.10, subds 2, 3) discovery statutes. The exemption applies, in context, to demands for discovery by opposing counsel in the course of litigation. (See 11th Annual Report of the *175 Judicial Conference, 1966, p 152.) The exemption in this State has been limited by statute (CPL 240.10, subd 2) and judicial construction “to those materials which are uniquely the product of a lawyer’s learning and professional skills, such as materials which reflect his legal research, analysis, conclusions, legal theory or strategy”. (Hoffman v Ro-San Manor, 73 AD2d 207, 211.)
Petitioners’ argument raises two questions: (1) whether the attorney’s work-product doctrine applies to Grand Jury proceedings in New York; and (2) whether documents such as drafts of contracts and notes in preparation of such draft documents are work product within the statute.
As previously noted, the work-product exemption has been applied to Federal Grand Jury proceedings. (Matter of Grand Jury Investigation, 599 F2d 1224, supra; see Upjohn Co. v United States, 449 US 383, 401 [cases collected therein].) However, the Federal definition of “work product” is significantly broader than the State definition. Rule 26 (subd [b], par [3]) of the Federal Rules of Civil Procedure (in US Code, tit 28, Appendix) exempts as “work product” any document “prepared in anticipation of litigation or for trial” by a party’s “representative”, not limited to his attorney. (Upjohn Co. v United States, supra, p 398, n 7.) The Federal rule exempts such material from disclosure to an opposing party unless it is shown to be necessary to the opponent’s case and otherwise unavailable. The Federal work-product rule in this broad sense is similar to New York’s conditional exemption from discovery of material “prepared for litigation”. (CPLR 3101, subd [d].) This litigation-material exemption specifically has been held not to bar disclosure pursuant to a legitimate Grand Jury subpoena. (Matter of Grand Jury Proceedings [Doe], 56 NY2d 348, 354; cf. Matter of Hynes v Lerner, 44 NY2d 329, 333.) The Court of Appeals (56 NY2d 348, 354) found that the legislative purpose in making the litigation-material exemption conditional was to permit access to such material for a compelling purpose, such as a Grand Jury investigation.
The Federal cases which have applied the work-product exemption in the Grand Jury context all rely upon a subcategory of Federal work product under rule 26 (subd *176 [b], par [3]), which declares, inter alia, the “mental impressions, conclusions, opinions or legal theories of an attorney * * * concerning the litigation”, absolutely privileged. (Upjohn Co. v United States, supra, p 401; see, also, People v Marin, 86 AD2d 40, 44.) To the extent that the Federal rule is limited to materials produced by an attorney (see Zimmerman v Nassau Hosp., 76 AD2d 921, 922) acting as an attorney, not in a nonlegal representative, investigative or other capacity (Mogollon v South African Mar. Corp., 88 AD2d 586, 587) it is the substantial equivalent of the New York work-product doctrine. (Cf. CPL 240.10, subd 2.) To that extent, Federal cases which apply the work-product exemption to Grand Jury proceedings are persuasive precedent. (See People v Marin, supra, pp 44-46; cf. Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C310L26, p 29.) Moreover, unlike the litigation-material exemption, the State Legislature has declared attorney’s work product absolutely immune from disclosure. (See Hoffman v Ro-San Manor, supra, p 211; cf. Matter of Grand Jury Proceedings [Doe], supra, p 354.) The court accordingly holds that the work-product exemption (CPL 240.10, subds 2, 3; CPLR 3101, subd [c]) applies in State Grand Jury investigations. (See CPL 190.30, subd 1; 60.10.)
However, the documents as to which petitioners invoke the work-product exemption are not covered thereby. The concept of attorney’s work product as privileged material arose in Hickman v Taylor (329 US 495), in the context of preparation for litigation, or, in other words, pretrial discovery. (Upjohn Co. v United States, supra, at p 397; see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:28, p 32.) Hickman held that an attorney’s notes of interviews of witnesses should not be available to opposing counsel in litigation since such disclosure would violate the “general policy against invading the privacy of an attorney’s course of preparation”. (329 US, at p 512; cf. People v Consolazio, 40 NY2d 446, 453-454.) The protected material was defined in Hickman as “written materials obtained or prepared by an adversary’s counsel with an eye toward litigation” (329 US, at p 511). As codified in the Federal rules (Fed Rules Civ Pro, rule 26, *177 subd [b], par [3] [in US Code, tit 28, Appendix]) work product is limited to materials “prepared in anticipation of litigation or for trial”. (See Upjohn Co. v United States, 449 US 383, 398, supra.) The New York legislative distinction between work product (CPLR 3101, subd [c]) and material prepared for litigation (CPLR 3101, subd [d]) did not remove the work-product exemption from the litigation context. (11th Annual Report of the Judicial Conference, 1966, p 152.) The effect of the legislative distinction was to limit the operation of the work-product exemption in State proceedings to materials prepared by the lawyer in the course of litigation. (Hoffman v Ro-San Manor, 73 AD2d, at p 211, supra; see People v Allen, 104 Misc 2d 136; Zimmerman v Nassau Hosp., supra, at p 922.) It may be that the attorney’s work-product exemption extends to legal matter prepared by an attorney in anticipation of litigation. (People v Marin, supra, pp 43-45; cf. Chemical Bank v National Union Fire Ins. Co. of Pittsburgh, Pa., 70 AD2d 837, 838; cf. Matter of Grand Jury Investigation, 599 F2d, at p 1229, supra) but no reasonable interpretation of the statutes (CPL 240.10, subd 2; CPLR 3101, subd [c]) permits the exemption from discovery of documents such as draft contracts routinely prepared with no view toward litigation. (Cf. Kandel v Tocher, 22 AD2d 513, 516; see, also, Magnaleasing, Inc. v Staten Is. Mall, 76 FRD 559, 563, n 4.)
Since none of the subpoenaed documents appears to have been prepared in connection with litigation of any sort, all claims of attorney’s work-product exemption are denied.
ATTORNEY-CLIENT PRIVILEGE
Unlike the work-product exemption, the attorney-client privilege does not depend upon the existence or prospect of litigation (Graham v People, 63 Barb 468, 483), but upon the existence of a legitimate attorney-client relationship within which the communications sought to be protected were made confidentially for the purpose of receiving or to assist in rendering legal advice (CPLR 4503, subd [a]). Legal advice within the context of the privilege means an opinion of law, legal services, or assistance in a legal proceeding. (People v Belge, 59 AD2d 307, 309; Matter of Priest v Hennessy, 51 NY2d 62, 68-69.) The purpose of the attorney-client privilege is to encourage full disclosure *178 by clients seeking legal advice, without fear that the facts revealed will later be disclosed by their counsel to their detriment. (Matter of Jacqueline F., 47 NY2d 215, 218.) The privilege is the client’s, not the attorney’s. (Jones v Reilly, 174 NY 97, 105.) Since the privilege is “an ‘obstacle’ to the truth-finding process” its scope is limited to that which is necessary to achieve its purpose. (Matter of Jacqueline F., supra, p 219; Matter of Priest v Hennessy, supra, p 68; Fisher v United States, 425 US 391, 403.)
Aside from the attorneys’ notes and draft documents previously mentioned, certain of the documents at issue are correspondence with the attorneys in which either petitioner A (files Nos. 15, 37, 49-51) or petitioner B (files Nos. 94, 133-135, 137-140, 142-144, 146) provide information in the context of seeking legal advice, or in which the attorneys render legal advice based upon information provided by the clients, and which are, accordingly, privileged. (People v Belge, supra, p 309.) Other correspondence is just as clearly beyond the scope of the privilege, such as a letter accompanying an interest payment on a loan from the client to the lawyer (file No. 20), regarding legal fees (file No. 74), and informing the attorneys of facts unrelated to legal advice (file No. 148). (See People v Belge, supra, pp 308-309.)
The attorneys’ notes fall into three categories. Some of the notes relate to commercial transactions from a factual, nonlegal perspective and include such information as start-up costs, operating expenses, other cost analyses and schedules of proposed contributions by entities in connection with initiating an enterprise. (Files Nos. 1, 22, 32, 41, 56, 62, 69, 70, 71, 80, 136, 141.) Other notes do not relate obviously to a specific business transaction, but are factual in nature, such as lists of figures or names, or agenda of work to be done. (Files Nos. 25, 59, 66, 69, 73, 80, 87, 114.) Still other notes were prepared by the attorneys in connection with drafting legal documents, such as partnership agreements. (Files Nos. 33, 56, 84, 116, 97.)
Notes containing factual matter in aid of negotiating commercial ventures are not privileged, since they were not made within the context of an attorney-client relationship. (Matter of Levinsky, 23 AD2d 25, 31; People v Belge, *179 supra, p 309.) This excludes the first category of notes from the privilege. Notes intended only for the attorney’s own use do not qualify as communications within the privilege, and when they contain only matter which is original with the attorney, such as a work agenda, the privilege does not apply. (SCM Corp. v Xerox Corp., 70 FRD 508, 523; see Hickman v Taylor, 329 US 495, 508, supra.)
An attorney’s notes may, of course, contain communications from the client made in confidence to obtain legal advice, “which * * * [the attorney] knowfs] only through *** [his] professional relation to * * * [his] client” and would to that extent be privileged from disclosure. (Graham v People, supra, p 483.) The privilege does not extend, however, to information obtained by the attorney from third persons even though obtained in the course of providing legal representation to the client, since no confidence of client to attorney is implicated in the disclosure of a third person’s information. (Kenford Co. v County of Erie, 55 AD2d 466, 469; City of Elmira v Larry Walter, Inc., 89 AD2d 645, 646.) The petitioners have failed to establish that they were the source of any of the information recorded in the attorneys’ notes or that the information there recorded was conveyed in confidence to the attorneys to obtain legal advice. The balance of the notes will therefore be disclosed. (Matter of Priest v Hennessy, supra, p 69.)
The subpoenaed documents also include drafts of partnership agreements and releases prepared by the attorneys for the clients. (Files Nos. 30, 56, 97.) A draft document in the attorney’s file may arguably be characterized as a communication from attorney to client in the course of rendering legal advice, and insofar as there has been no disclosure of the draft’s contents to third persons, it is confidential. The intention to disclose the contents, in the final executed agreement, to third persons does not defeat the privilege prior to any actual disclosure. (Matter of Vanderbilt [Rosner — Hickey], 57 NY2d 66, 77.) It does not necessarily follow, however, that in every instance, a draft legal document is absolutely immune from disclosure. (See Matter of Priest v Hennessy, 51 NY2d 62, 69, supra.) The purpose of the privilege to encourage full disclosure by client to attorney is not advanced by protecting communi *180 cations from attorney to client which are entirely the product of the attorney’s research, whether legal or factual, and contain nothing conveyed by the client to the attorney in confidence. (SCM Corp. v Xerox Corp., supra, p 522; Kenford Co. v County of Erie, supra, pp 469, 471.) Since the petitioners have failed to establish that any of the factual matter contained in the drafts was conveyed by them to their attorneys, in confidence, the documents will be disclosed. (Matter of Priest v Hennessy, supra.) The same principles apply to permit disclosure of correspondence from attorney to client which accompanies a draft (file No. 145) or executed (file No. 132) document but reveals nothing confidential as to the contents thereof.
In one instance, the petitioner A, invokes the attorney-client privilege with regard to a memorandum prepared by a third person and sent to A and to his attorney. Assuming that his copy of the memorandum was given by the client to the attorney to obtain legal advice, thus qualifying as a communication within the context of the privilege, the document is nonetheless not privileged. It is a well-recognized exception to the attorney-client privilege that “preexisting documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process” (Fisher v United States, 425 US 391, 403-404; Jones v Reilly, 174 NY 97, 105, supra.) This rule is designed to limit the scope of the privilege to that required to encourage the client’s full disclosure. It is no disincentive to require the client to disclose, after communication with his attorney, that which he would have had to disclose prior to his communication. (Fisher v United States, supra, pp 403-404; Matter of Mitchell, 12 Abb Prac 249, 259-260.) Since there is no basis upon which petitioner A could have withheld the third-person document from subpoena, his attorney may not withhold it in his stead. (Fisher v United States, supra, p 414.)
PRIVILEGE AGAINST SELF INCRIMINATION
The inverse of the preceding principle also applies: nothing which could not have been obtained by judicial process from the client’s possession may be obtained by judicial process from the attorney following transfer by the client *181 to the attorney in order to obtain more informed legal advice. (Matter of Vanderbilt [Rosner — Hickey], 57 NY2d, at p 76, supra; Fisher v United States, 425 US, at pp 403-405, supra.) Therefore, even though production of the documents under these circumstances would not constitute compelled self incrimination under the Fifth Amendment since the compulsion by subpoena is not directed at petitioner A who alleges a danger of incrimination but at his attorneys (Fisher v United States, supra, pp 396-401; Matter of Vanderbilt [Rosner — Hickey], supra, p 75), the attorneys may nonetheless assert the Fifth Amendment on the client’s behalf, in order to implement the confidentiality protected by the attorney-client privilege (57 NY2d, at p 76; 425 US, at p 405). The documents, in order to be immune from subpoena, must have been disclosed by the client to the attorney in the context of seeking legal advice (People v Belge, supra, 59 AD2d, at p 309, supra); and must be of a kind that would have been privileged in the client’s possession. (Matter of Vanderbilt [Rosner — Hickey], supra, p 76.)
As previously discussed, a document such as a draft of a •letter from the client to a third person, which refers the addressee to the attorney as an agent for the sale of real estate (file No. 17) and for other commercial purposes is not a communication to the attorney to obtain legal advice. Neither are notes taken by the attorney in reference to the cost of acquiring and operating coal-producing property (file No. 36) within the attorney-client privilege. (People v Belge, supra, p 309; Matter of Levinsky, 23 AD2d, at p 31, supra.) Since these documents were not disclosed in the context of an attorney-client relationship, but in the con-1 text of a commercial agency as to which there is no privilege (see, e.g., Matter of Ruth E. v David E., 76 Misc 2d 2, 4-5), no purpose would be served in permitting a vicarious assertion of the Fifth Amendment. (See Couch v United States, 409 US 322, 335.)
Other communications between petitioner A and the attorney do qualify as privileged communications, even though made in a commercial context, since they were made for the purpose of obtaining legal advice. Thus, a letter in which the petitioner provides information to assist *182 the attorney’s preparation of a settlement agreement (file No. 96) is privileged. The letter is also privileged under the Fifth Amendment, since it contains statements written by the petitioner which he affirms would be incriminatory if disclosed. (Matter of Vanderbilt [Rosner — Hickey], supra, pp 78-79; see, also, United States v Beattie, 541 F2d 329, 331.)
There is also a draft agreement (file No. 92) prepared by the attorney for petitioner A which petitioner asserts contains matter disclosed in confidence to the attorney for purposes of negotiating and drafting the contract. As previously noted, insofar as the draft contains information imparted to the attorney by the client in confidence it is protected by the attorney-client privilege. (Kenford Co. v County of Erie, 55 AD2d, at p 469, supra; SCM Corp. v Xerox Corp., 70 FRD, at p 522, supra.) The District Attorney argues that the disclosure of the contents of the proposed agreement by petitioner A to petitioner B abrogated the confidentiality of the communication. Petitioner A contends that since he and petitioner B were the sole parties to the agreement and were consulting the attorney in a matter of mutual interest, the confidentiality of attorney-client relationship extended to communications between the attorney and either client. This principle has been recognized in New York. (Cf. Magnaleasing, Inc. v Staten Is. Mall, 76 FRD, at p 563, n 6, supra.) In Root v Wright (84 NY 72, 76) the Court of Appeals held that “an attorney, employed as the common attorney of two or more parties to give advice in a matter in which they are mutually interested * * * cannot disclose such communication in a controversy between such parties and a third person.”
The rule of mutual confidentiality has been recognized in the context of legal representation in commercial matters (Finn v Morgan, 46 AD2d 229, 235), intestate proceedings (Wallace v Wallace, 216 NY 28, 36), and outside the context of litigation (SCM Corp. v Xerox Corp., supra, p 513). The court, accordingly, holds that drafts of an unexecuted agreement drawn at the behest of persons who con- *183 suit an attorney for a mutual interest* reflected in the agreement, which contain information imparted to the attorney in confidence and in reliance upon the confidentiality of the attorney’s relationship with the other parties, and which information has not been disclosed otherwise, are protected by the attorney-client privilege against disclosure to nonparties (cf. Attorney-Client Privilege — Joint Clients, Ann., 4 ALR4th 765).
The issue remains whether the draft contract would be immune from disclosure under the privilege against self incrimination had it remained in petitioner A’s possession. (Fisher v United States, 425 US, at pp 403-404, supra.) The document was made by the attorney, not by the petitioner, and to that extent the statements therein are the attorney’s. The court, however, finds that in the context of a draft agreement purportedly made in petitioner’s name, the attorney’s function was to incorporate in legally binding language the intention and thoughts of the petitioner. (Cf. People v Rivera, 45 NY2d 989, affg 58 AD2d 147.) Insofar as the draft agreement contains declarations of fact which could only have been obtained by the attorney from the petitioner, the court finds that it is a testimonial declaration within the meaning of the Fifth Amendment. (See Matter of Vanderbilt [Rosner — Hickey], 57 NY2d, at p 78, supra.)
Moreover, the compulsion by subpoena must be seen as having been directed at the petitioner himself by virtue of the attorney-client relationship (cf. Couch v United States, 409 US, at p 335, supra). The attorney, in effect, incorporated as an agent of the petitioner incriminatory declarations of fact made upon petitioner’s authority and in his name (cf. People v Copicotto, 50 NY2d 222, 229). To hold that because the attorney may authenticate the document the privilege against self incrimination is inapplicable, would undermine the Supreme Court’s explicit concern that the integrity of the Fifth Amendment privilege be maintained in the attorney-client context. (Fisher v United States, supra, pp 402-405; see The Rights of Criminal *184 Defendants and The Subpoena Duces Tecum: The Aftermath of Fisher v. United States, 95 Harv L Rev 683, 685-692.) Therefore, in order to implement the purpose of the attorney-client privilege to encourage clients’ complete disclosure, the attorney and client must be regarded as a single person as to the authentication of documents, pursuant to subpoena, protected by the privilege against self incrimination. In brief, authentication by the attorney should be the equivalent of authentication by the client on whose behalf the attorney-client and Fifth Amendment privileges are asserted. (Cf. Couch v United States, supra; Fisher v United States, supra, pp 410-411.) The principle applies to both clients where there is mutuality in the attorney-client relationship. (Root v Wright, 84 NY, at p 76, supra.) Consequently, the draft contract is immune from subpoena.
Many of the documents at issue are executed agreements between petitioner A and petitioner B individually (files Nos. 95, 102, 152) or on behalf of corporations (files Nos. 93, 98), or between petitioner A and others (files Nos. 38, 103, 104). The court holds that executed legal documents, whether made between clients of a common attorney who draws the agreement, or between parties at arm’s length, are not confidential communications within the attorney-client privilege. Unlike a draft, an executed legal document purports to establish rights or to impose liabilities enforceable in the public domain. (See Randy Int. v Automatic Compactor Corp., 97 Misc 2d 977, 983 [escrow agreement].) The parties to the document, by agreeing to and relying upon its enforceability have waived any continued expectation of confidentiality with respect to the contents thereof. (Magnaleasing, Inc. v Staten Is. Mall, 76 FRD, at p 562, supra; cf. People v Rivera, 58 AD2d 147, 150, affd 45 NY2d 989, supra.) Even though the agreement may not have been publicized, it cannot be regarded as a confidential communication between the clients and their attorney (Magnaleasing, Inc. v Staten Is. Mall, supra, p 564), since the document speaks for itself, and is a communication between the parties and the public at large. (Schattman v American Credit Ind. Co., 34 App Div 392; see Attorney-Client Privilege — Lost Documents, Ann., 55 ALR3d *185 1322.) Therefore, any expectation of confidentiality that clients with a mutual interest may have in their separate communications with their common attorney cannot survive the incorporation of those communications into an enforceable contract. (Cf. Baxter v Baxter, 92 Misc 567, 570-571, affd 173 App Div 998.)
Moreover, those contracts made by the petitioner on behalf of corporate entities (files Nos. 93, 98) would not have been privileged had they remained in his possession, since the compulsion is directed at the corporate owner and not at the petitioner individually. (Bellis v United States, 417 US 85, 97.) Two remaining documents (files Nos. 99, 102) were executed by petitioner B alone. Neither of these documents would have been privileged in petitioner A’s possession (petitioner B asserts no privilege in regard thereto), since they do not contain any testimonial declaration attributable to him. (See People v Copicotto, 50 NY2d, at p 229, supra.) Since they were written by petitioner B they cannot be regarded as confidential communications between petitioner A and his attorney (Fisher v United States, 425 US, at pp 403-404, supra.)
Accordingly, the court finds that the documents in files Nos. 15, 37, 49 through 51, 92 and 96 are privileged as to petitioner A and the documents in files Nos. 94, 133 through 135, 137 through 140, 142 through 144 and 146 are privileged as to petitioner B.

 It is doubtful whether documents drawn to terminate mutual interests, or negotiations pursuant to such termination are within the rule of mutual privilege. (SCM Corp. v Xerox Corp., 70 FED 508. 512: see Hurlburt v Hurlburt, 128 NY 420; Ann., 4 ALR4th 765.)