Anthony C. FINE, Plaintiff,

v.

**FACET AEROSPACE PRODUCTS COMPANY, Teledyne Industries, Inc., Teledyne, Inc., and The Cessna Aircraft Company, Defendants.**

**The CESSNA AIRCRAFT COMPANY, Third–Party Plaintiff,**

v.

**RELIANT AIRCRAFT SERVICE, INC., and Schneider Air Service, Inc., Third–Party Defendant.**

No. 88 Civ. 3698 (LBS).

United States District Court, S.D. New York.

Nov. 27, 1990.

</div>

Daniel Donnelly, Garrison, N.Y., for plaintiff.

Charles D. Donohue, Shanley & Fisher, P.C., New York City, for Cessna Aircraft Co.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate.

This personal injury action arises out of the crash of a single engine airplane. On October 31, 1987, plaintiff Anthony Fine, a flight instructor, and a student pilot, Robert Abady, took off from Sky Acres Airport in Dutchess County, New York aboard a 1966 Cessna Model 150F aircraft. According to the plaintiff, the plane rose to an altitude of about 250 feet, stalled, and plunged to earth. Mr. Fine sustained complete blindness as a result of the crash.

The plaintiff contends that the crash was caused by the presence of water in the aircraft's fuel system. Accordingly, Mr. Fine has sued the manufacturer, Cessna Aircraft Company ("Cessna"), on theories of negligence and strict products liability.

The plaintiff invokes the diversity jurisdiction of the Court. Cessna, in turn, alleges that the crash resulted from improper maintenance of the aircraft, and it has filed a third-party action against two companies that serviced the plane, Reliant Aircraft Service, Inc. and Schneider Air Service, Inc.

*The Discovery Dispute*

Currently pending before the Court is a dispute concerning two documents which the plaintiff demands be disclosed by Cessna. The first document, entitled "Aircraft Fuel Water Tolerance," is an internal report created by Cessna addressing the history of the problem of water in the fuel systems of its aircraft, testing that was done, and possible solutions. The second document is a variant of the first.

Cessna produced in discovery redacted copies of these documents. However, it withheld portions of each on grounds of relevance, attorney-client privilege, and work product. First, it contends that only those sections of the reports dealing with metal fuel tanks or protruding vented fuel caps are relevant, since the Cessna 150 involved in the crash had these characteristics. Cessna therefore deleted from the documents those portions dealing with rubber bladder fuel tanks, wet wing fuel systems, and flush-type fuel filler caps.

Second, Cessna redacted certain sections of the documents on grounds of attorney-client privilege. It argues that these portions reflect privileged communications by T.W. Wakefield, Subsidiary General Counsel and Assistant Secretary of Cessna. Affidavit of T.W. Wakefield dated October 18, 1990 at ¶ 1. According to Mr. Wakefield, in 1985 he was asked by Cessna's engineering department for legal advice regarding the company's legal exposure for claims arising out of fuel contamination. *Id.* at ¶ 6. In response, he provided an historical review of such claims, including lawsuits then pending. *Id.* at ¶ 7. This information was then incorporated in "Aircraft Fuel Water Tolerance" by its author, Stanley O'Brien, a Cessna engineering supervisor. *Id.* at ¶ 2. The sections in question have been kept confidential by Cessna. *Id.* at ¶ 8.

Finally, Cessna removed handwritten notations from one page produced to the plaintiff. These notes were made by a paralegal in preparation for litigation in another case, and Cessna contends that they are immune from discovery as work product.

The plaintiff disputes each of the arguments advanced by Cessna and asks that the documents be produced in their entirety. With the agreement of counsel, I have reviewed unredacted copies *in camera* and can now rule on the appropriateness of disclosure.

*Discussion*

A. Relevance

■ In product liability actions it is frequently difficult to judge which of a manufacturer's products are sufficiently similar to the allegedly defective product to be subject to discovery. Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation. For example, where a plaintiff alleged that three-wheel all-terrain vehicles are inherently unstable, he was entitled to discovery with respect to each of the manufacturer's models. *See Culligan v. Yamaha Motor Corp.*, 110 F.R.D. 122, 124, 126 (S.D.N.Y. 1986). Similarly, an injured party who contended that the redesigned motor mounts that had failed in his vehicle had not eliminated the defects of earlier models was granted discovery concerning the predecessor versions. *See Swain v. General Motors Corp.*, 81 F.R.D. 698, 699–700 (W.D. Pa.1979). Finally, a plaintiff arguing that the left front spring main leaf on his vehicle failed could obtain discovery regarding all types of vehicles with that component, not merely the identical model. *See Uitts v. General Motors Corp.*, 58 F.R.D. 450, 452 (E.D.Pa.1972) ("*Uitts I*"). *See also Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir.1982) (similar models of printing presses); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 617 (5th Cir.1977) (similar models of backhoes), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978);

*Bowman v. General Motors Corp.*, 64 F.R.D. 62, 70–71 (E.D.Pa.1974) (subsequent vehicle model with similar fuel system); *Hammill v. Hyster Co.*, 42 F.R.D. 173, 174 (E.D.Wis.1967) (various models of cranes).

On the other hand, where there has been no suggestion that other models share pertinent characteristics with the products at issue, discovery relating to those models will be disallowed. In *Prashker v. Beech Aircraft Corp.*, 258 F.2d 602 (3d Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 236, 3 L.Ed.2d 230 (1958), for example, the court permitted discovery of three model years preceding the model at issue, but denied discovery as to a still earlier model, finding that it was too dissimilar. *Id.* at 608. Likewise, a plaintiff was denied information about a vehicle recall when the Court found that the models recalled did not have the same component at issue in the litigation. *See Uitts v. General Motors Corp.*, 62 F.R.D. 560, 562–63 (E.D.Pa.1974) ("*Uitts II*"). Indeed, the Second Circuit endorsed the denial of recall information involving the same component where the defect that allegedly caused the accident differed from the defect that triggered the recall. *See Butkowski v. General Motors Corp.*, 497 F.2d 1158, 1159 (2d Cir.1974). Finally, a request for discovery of models with the same type of component as in the accident vehicle was denied on grounds that the word "type" was too vague, and the court limited discovery to models with the identical components. *See Frey v. Chrysler Corp.*, 41 F.R.D. 174, 176 (W.D.Pa.1966).

■ Thus, in order to determine the proper scope of discovery here, it is first necessary to define the plaintiff's legal claims.[1] In part, Mr. Fine argues that the fuel system of the Cessna 150F was defectively designed.

In a strict products liability action based upon design defect, whether the product as marketed was reasonably safe for its intended use is determined by whether a reasonable person with knowledge of the potential for injury of the product and of the available alternatives, balancing the product's risks against its utility and costs against the risks, utility, and cost of the alternatives, would have concluded that it should not have been marketed in the condition that it was.

*Cover v. Cohen*, 61 N.Y.2d 261, 266–67, 473 N.Y.S.2d 378, 380, 461 N.E.2d 864, 866 (1984). Thus, it is the plaintiff's burden here to prove that there were feasible design alternatives which would have rendered the aircraft safer. *See Murphy v. Nissan Motor Corp. in U.S.A.*, 650 F.Supp. 922, 925 n. 3 (E.D.N.Y.1987); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 109, 463 N.Y.S.2d 398, 402, 450 N.E.2d 204, 208 (1983). Accordingly, the plaintiff argues that bladder tanks, wet wing fuel systems, and flush-type fuel filler caps are alternative designs and so are subject to discovery.

■ Indeed, there is support for the proposition that a plaintiff who raises a design defect claim is entitled to broader discovery than, for example, if the claim were solely one of negligent manufacture. For example, in *Murphy v. Nissan Motor Corp. in U.S.A.*, the plaintiff contended that her injuries were caused by an unreasonably dangerous automobile design in which the reclining seats rendered the seatbelts ineffective. 650 F.Supp. at 925. When she sought discovery relating to her assertion that airbags were a feasible design alternative, the defendant responded by contending that such a claim was preempted by federal regulation. *Id.* at 924. The court rejected the preemption arguments and referred the motion to compel discovery to a magistrate, thus at least implicitly recognizing that discovery of al-

---

1. In a diversity case such as this, a federal court applies the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, the parties have apparently assumed that the substantive law of New York applies. This assumption is well-founded in view of the facts that the plaintiff is a New York domiciliary, the accident occurred here, and there has been no suggestion that "extraordinary circumstances" dictate application of any other state's law. *See O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 846–51 (2d Cir.1984) (in tort cases, New York courts choose law of site of the wrong, absent extraordinary circumstances).

ternative designs may be wide-ranging. *Id.* at 929.

■ This case differs from *Murphy*, however, in the extent to which the designs for which discovery is sought have been shown to be "alternatives" to the allegedly defective design. There is little doubt that airbags are substitutes for or complements to seat belts: both are passive restraint devices that can be installed interchangeably or in tandem in passenger automobiles. By contrast, there has been no showing here that bladder tanks or wet-wing fuel systems are potential substitutes for metal fuel tanks. Although they are obviously generically related, they may have characteristics that make them adapted exclusively to different types of aircraft. For example, components serving a particular function on a helicopter may not be an alternative design for components serving the same function on fixed-wing planes.

Furthermore, even if these fuel systems and fuel filler caps are properly considered "alternatives" for those utilized on the model at issue, the plaintiff has not specifically alleged that they would have been safer. While it may be common knowledge that airbags provide greater protection than seatbelts alone, there is no such general understanding of the relation between various types of aircraft fuel systems. Nor do the documents reviewed *in camera* reveal on their face that the alternative designs would present fewer hazards related to fuel contamination.

In order for the requested discovery to be relevant, then, it must be demonstrated that the designs are truly alternatives and that they are potentially safer. Of course, the party seeking discovery need not prove its case on the merits in order to obtain disclosure. It must, however, make some threshold showing of relevance before the opposing party is obligated to open to discovery a variety of designs not directly at issue in the litigation. Here, such a showing could have been made, for example,

through the affidavit of an expert in aviation engineering. Since it was not, the plaintiff's application for an order compelling discovery of information about these designs is denied, and Cessna may withhold the material redacted on that basis.[2]

### B. Attorney–Client Privilege

Cessna also redacted from the documents produced those portions relating to the company's exposure to litigation due to fuel contamination. Cessna contends that this information is protected from disclosure by the attorney-client privilege.

In a diversity case where state law determines the rule of decision, the privilege of a witness is determined by state law. Fed. R.Evid. 501. *See Bower v. Weisman*, 669 F.Supp. 602, 603 (S.D.N.Y.1987); *Drimmer v. Appleton*, 628 F.Supp. 1249, 1250 (S.D. N.Y.1986). New York courts apply the privilege law of the place where the evidence will be introduced at trial or the location of the discovery proceeding. *Id.* at 1250. Hence, New York privilege rules apply in this case.

■ New York law defines as privileged "evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment." N.Y.Civ. Prac.L. & R. § 4503. However, the New York courts recognize that the attorney-client privilege obstructs the truth-finding process and must be narrowly construed. *See Rossi v. Blue Cross and Blue Shield of Greater New York*, 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 510, 540 N.E.2d 703, 705 (1989) (*"Rossi"*); *Priest v. Hennessy*, 51 N.Y.2d 62, 68, 431 N.Y.S.2d 511, 514, 409 N.E.2d 983, 986 (1980). Further, the burden of proving each element of the privilege rests on the party asserting it. *Id.* at 69, 431 N.Y.S.2d at 514, 409 N.E.2d at 986.

■ The purpose of the attorney-client privilege is to foster "uninhibited dialogue between lawyers and clients in their profes-

---

**2.** These redactions appear on documents no. 6410 (second redaction), 6411A, 6418, 6419, 6420, 6421, 6428, 6429, 6430, 6431, 6432, 6433, 6434, 6437, 6438, 6439, 6440, 6441, 6442, 6447, 6448, 6449, 6450, 6451, 6452, 6454, 6455, 6510 (second redaction), 6511, 6514, 6515, 6516, 6517, 6518, 6519, 6520, and 6520A–G.

sional engagements, thereby ultimately promoting the administration of justice." *Rossi*, 73 N.Y.2d at 592, 542 N.Y.S.2d at 510, 540 N.E.2d at 705. *See also Priest v. Hennessy*, 51 N.Y.2d at 67–68, 431 N.Y.S.2d at 513–14, 409 N.E.2d at 985–86; *In re Bekins Storage Co.*, 118 Misc.2d 173, 177–78, 460 N.Y.S.2d 684, 690 (Sup.Ct.N.Y.Co.), *aff'd*, 94 A.D.2d 643, 463 N.Y.S.2d 349 (1st Dep't 1983), *mod. on other grounds*, 62 N.Y.2d 324, 476 N.Y.S.2d 806, 465 N.E.2d 345 (1984). Two consequences flow from this. First, the privilege protects both client communications to their attorneys and communications from the attorney to the client which include legal advice or reflect information provided by the client in confidence. *See Rossi*, 73 N.Y.2d at 592, 542 N.Y.S.2d at 510, 540 N.E.2d at 705. Second, while the privilege covers communications made in connection with the rendering of legal advice, it does not extend to the provision of business and management advice. *See Id.; In re Bekins Storage Co.*, 118 Misc.2d at 178, 460 N.Y.S.2d at 690.

▪ In this case, Cessna has failed to sustain its burden of demonstrating that the redacted portions of the report entitled "Aircraft Fuel Water Tolerance" are privileged. The report was drafted by Cessna's engineering department for purposes of risk management. While one goal of such an analysis is, of course, to reduce costs associated with litigation, a myriad of business interests motivate a manufacturer to enhance the safety of its product. *Cf. Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402–04 (8th Cir.) (summary risk management information produced; individual reserve figures privileged), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). T.W. Wakefield, who provided purportedly privileged information included in the report, serves not only as in-house counsel, but also as Assistant Secretary of Cessna, thus increasing the probability that the communications were made for general business purposes. His averment that he provided legal advice in connection with the report is entirely conclusory, and Cessna has not provided any documentation of the actual communications that Mr. Wakefield made to the engineering department. Perhaps most important, the information itself consists primarily of the simple categorization of claims against Cessna. No legal acumen was required to identify how many times Cessna has been sued or what other plaintiffs have demanded or obtained as relief. Certainly, the information in the report reveals no legal advice, no confidential information conveyed to the attorney by the client, and nothing of the thought processes of counsel.

▪ In short, the communication from counsel to his client of a summary of past or pending litigation is not in and of itself privileged. *See In re Bekins Storage Co.*, 118 Misc.2d at 179–80, 460 N.Y.S.2d at 690–91 (attorney's notes disclosed where no client confidences implicated). In this case, the disclosure of information used as the basis for a general risk management report would in no way impede free dialogue between Cessna and its attorneys for purposes of obtaining legal, as opposed to business, advice. Accordingly, the attorney-client privilege was not properly asserted, and the documents shall be disclosed.[3]

### C. Work Product

Finally, Cessna redacted handwritten notes from document no. 6404. These notes were made by a paralegal in the course of discovery in another case, and Cessna argues that they are therefore protected from disclosure under the work product doctrine.

▪ Because the work product doctrine is a device providing qualified immunity from discovery rather than a traditional substantive privilege, Rule 501 of the Federal Rules of Evidence does not require that state law be applied. *See Railroad Salvage of Connecticut, Inc. v. Japan Freight Consolidators, (U.S.A.), Inc.*, 97 F.R.D. 37, 39–40 (E.D.N.Y.1983); *Merrin Jewelry Co. v. St. Paul Fire and Marine*

---

**3.** These consist of the redacted portions of documents no. 6405, 6407, 6408, 6409, 6410 (first redaction), 6411, 6509, and 6510 (first redaction).

*Ins. Co.,* 49 F.R.D. 54, 56 (S.D.N.Y.1970). Rather, Cessna's work product claim is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure, which allows discovery of documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" only when the party seeking discovery can show that it has substantial need for the materials and that the information sought is otherwise unavailable.

Here, the notes at issue fall squarely within the definition of work product. First, they are indisputably tangible things. Second, they were prepared in connection with litigation, since they relate to the production of documents during discovery. The fact that it was discovery in another case is immaterial. "[T]he literal language of [Rule 26(b)(3) ] protects material prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *F.T.C. v. Grolier Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983) (emphasis in original), citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 201 (1970). *See also Midland Investment Co. v. Van Alstyne, Noel & Co.,* 59 F.R.D. 134, 138 (S.D.N.Y.1973); *but see United States v. International Business Machines Corp.,* 66 F.R.D. 154, 178 (S.D.N.Y. 1974). Finally, the work product of a paralegal is subject to Rule 26(b)(3), whether the paralegal is viewed as an extension of the attorney or as another representative of the party itself. *See United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 966 (3d Cir.1988); *Sterling Drug Inc. v. Harris,* 488 F.Supp. 1019, 1026–27 (S.D.N.Y.1980). Accordingly, the notes on document no. 6404 were properly redacted.

*Conclusion*

For the reasons set forth above, Cessna's objections to producing documents on grounds of relevance and work product immunity are upheld. Its claims of attorney-client privilege are rejected, and it shall produce unredacted copies of the documents withheld on that basis.

SO ORDERED.