Conway COHALAN, Plaintiff,

v.

GENIE INDUSTRIES, INC., Defendant.

Genie Industries, Inc., Third–
Party Plaintiff,

v.

Christies Inc. and Christie's Inc.,
Christie's International PLC,
Third–Party Defendants.

No. 10 Civ. 2415 (RJH)(JCF).

United States District Court,
S.D. New York.

Aug. 30, 2011.

Noah H. Kushlefsky, Kreindler & Kreindler, New York, NY, Norman Hobbie, Hobbie, Corrigan, Bertucio & Tashjy, P.C., Eatontown, NJ, for Plaintiff.

Robert Joseph Walker, Gallagher Walker Bianco & Plastaras, LLP, Mineola, NY, for Defendant/Third–Party Plaintiff.

Doris Rios Duffy, Edward Garfinkel, Law Offices, Brooklyn, NY, Third–Party Defendants.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate Judge.

Conway Cohalan brings the instant action against Genie Industries, Inc. ("Genie"), a company that manufactures industrial equipment, alleging that he suffered damages as a result of either a design defect in one of Genie's personnel lifts or Genie's failure to provide adequate warnings regarding the dangerousness of that lift. The plaintiff seeks to compel discovery from Genie that relates, in principal part, to models of personnel lifts manufactured by Genie other than the one that allegedly caused the plaintiff's injuries. For the reasons set forth below, the plaintiff's motion is granted.

*Background*

On November 12, 2007, Mr. Cohalan was working at a Christie's Auction House ("Christie's") warehouse, utilizing a model PLC–15P personnel lift manufactured by Genie. (Complaint ("Compl."), ¶¶ 6, 8). Mr. Cohalan was atop the extended lift when it tipped over, causing him to fall approximately twenty feet to the ground and sustain significant injuries. (Compl., ¶¶ 8–9). At the time the lift fell over, it was being wheeled around the warehouse by a colleague of Mr. Cohalan's, and the outriggers with which the lift was equipped in order to prevent tip-over were not set up. (Memorandum of Law in Opposition to Plaintiff's Motion to Compel Defendant Genie to Produce Discovery ("Def. Memo.") at 3–5 & Exh. 5).

On March 17, 2010, the plaintiff filed a complaint against Genie, asserting claims of strict product liability and negligence in the design of the personnel lift and the safety warnings accompanying the lift. (Compl. at 3–6). Genie answered the complaint on April 21, 2010, and on December 10, 2010 filed a third-party complaint against the corporate owners of Christie's, alleging that the accident and the plaintiff's injuries were the proximate result of Christie's negligent or intentional conduct in maintaining and operating the lift. (Third Party Complaint at 3–5).

Mr. Cohalan served a Rule 34 request for production of documents and materials on Genie on August 3, 2010. (Affirmation of Noah H. Kushlefsky dated April 28, 2011 ("Kushlefsky Aff."), ¶ 2). On September 8, 2010, following Genie's failure to propound initial discovery disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure or respond to the plaintiff's request for production, the plaintiff wrote to Genie, requesting these discovery materials. (Letter of Jared L. Watkins dated Sept. 8, 2010, attached as part of Exh. 5 to Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion to Compel Defendant Genie to Produce Discovery ("Pl. Reply Memo.")). When no response was forthcoming, the plaintiff contacted the Court to request an informal conference in order to discuss the defendant's discovery delinquency. (Letter of Jared L. Watkins dated Sept. 23, 2010, attached as part of Exh. 5 to Pl. Reply Memo.). After conferring with Genie and being assured that document production was forthcoming, the plaintiff withdrew his request for an informal conference. (Email of Jared L. Watkins dated Sept. 24, 2010, attached as part of Exh. 5 to Pl. Reply Memo.).

On September 27, 2010, Genie provided the plaintiff with its initial disclosure of documents pursuant to Rule 26 of the Federal Rules of Civil Procedure. (Response to Plaintiff's First Request for Production of

Documents and Materials to Defendant Genie Industries, Inc. ("Response Production"), attached as Exh. 2 to Kushlefsky Aff., ¶ 1). However, Genie did not respond to the plaintiff's request for production, and on October 6, 2010, the plaintiff again wrote to the defendant requesting that those documents be turned over. (Letter of Jared L. Watkins dated Oct. 6, 2010, attached as part of Exh. 5 to Pl. Reply Memo.). The plaintiff continued to request this production from the defendant, ultimately turning to the Court a second time to request an informal conference to address the defendant's failure to comply with discovery demands. (Email of Jared L. Watkins dated Oct. 18, 2010 and Letter of Noah H. Kushlefsky dated Nov. 3, 2010, both attached as part of Exh. 5 to Pl. Reply Memo.). A telephone conference was held before the Honorable Richard J. Holwell, U.S.D.J., on November 22, 2010, but Genie persisted in its failure to respond to the plaintiff's request for production. (Kushlefsky Aff., ¶ 3). As a result, Mr. Cohalan filed a motion to compel on January 13, 2011. (Notice of Motion, attached as part of Exh. 5 to Pl. Reply Memo.).

Finally, on January 20, 2011, Genie provided a response to the plaintiff's request for production. (Kushlefsky Aff., ¶ 3; Response Production). In addition to making various specific objections, the defendant objected generally to all of the plaintiff's requests for "documents, information, or materials concerning 'PLC model lifts', 'PLC model lift', 'any PLC model lifts', 'PLC model personnel lifts', 'PLC model personnel lift', 'Model PLC personnel lifts', 'other PLC model lifts', 'other PLC model lift', and 'Genie Industries personnel lifts' " as overly broad, unduly burdensome, and irrelevant. (Response Production at 1). The plaintiff withdrew his motion to compel, and the parties embarked upon discussions in an attempt to resolve these objections. (Kushlefsky Aff., ¶¶ 3–4). Although they were able to resolve some disputes, the parties were unable to come to an agreement regarding disclosure by Genie of materials related to models and products other than the specific model of personnel lift—the PLC–15P—in which the plaintiff was injured. (Letter of Robert J. Walker dated Feb. 8, 2011 ("Walker Letter"), attached as

Exh. 3 to Kushlefsky Aff.). Accordingly, I held a telephone conference with the parties on April 5, 2011. (Kushlefsky Aff., ¶ 4). As a resolution still could not be reached, I gave the plaintiff permission to file a motion to compel "discovery of information about lift models similar but not identical to the subject lift." (Order dated April 6, 2011). On April 28, the plaintiff filed the instant motion, arguing that information regarding other lift models is both relevant and subject to discovery, and that, in any event, the defendant waived its objections to the plaintiff's request for production by failing to respond in a timely fashion. (Memorandum of Law in Support of Plaintiff's Motion to Compel Defendant Genie to Produce Discovery ("Pl. Memo.") at i).

*Discussion*

A. *Waiver*

■ "A failure to respond or object to a discovery request in a timely manner waives any objection which may have been available." *UBS International Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, No. 09 Civ. 4286, 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010) (citing *Smith v. Conway Organization, Inc.*, 154 F.R.D. 73, 76 (S.D.N.Y.1994)); *see also Labarbera v. Absolute Trucking, Inc.*, No. 08 CV 4581, 2009 WL 2496463, at *1 (E.D.N.Y. Aug. 12, 2009) ("It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available."); *Eldaghar v. City of New York Department of Citywide Administrative Services*, No. 02 Civ. 9151, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) ("If a party fails to file timely objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests."). " 'Any other result would ... completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences.' " *Eldaghar*, 2003 WL 22455224, at *1 (alteration in original) (quoting *Slauenwhite v. Bekum Maschinenfabriken, G.m.b.H.*, 35 Fed.R.Serv.2d (Callaghan) 975, 975 (D.Mass.1983)).

Generally, courts will only impose waivers for tardiness under three conditions: (1) where there is no showing of good cause for the late response, (2) where a party has not responded to discovery requests despite court intervention, or (3) where a party has failed entirely to respond. *Callaway Golf Co. v. Corporate Trade Inc.*, No. 10 Civ. 1676, 2011 WL 1642377, at *2 (S.D.N.Y. April 25, 2011); *see also Labarbera*, 2009 WL 2496463, at *2 (imposing waiver in part because party had "not shown good cause for its failure to respond"); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, No. 06 Civ. 6198, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007) (" 'Given the absence of a valid explanation for the defendant's failure to serve its objections in a timely manner, ... a finding of waiver is appropriate.' " (alteration in original) (quoting *Eldaghar*, 2003 WL 22455224, at *1)).

Mr. Cohalan's request for production was served on Genie on August 3, 2010. (Kushlefsky Aff., ¶ 2). Pursuant to Rule 34(b)(2)(A) of the Federal Rules of Civil Procedure, Genie's response was due thirty days thereafter, unless a longer response time was stipulated to or ordered by the Court. Genie did not provide a response to this request until January 20, 2011, well over four months late. (Response Production). The only excuse that Genie has proffered for this delay is its "understanding from speaking with [Mr. Cohalan's lawyer] that the plaintiff agreed to extend the defendant's time to respond while the parties attempted to resolve these issues." (Def. Memo. at 13). However, this understanding is plainly belied by the plaintiff's persistent and exhaustive efforts to prompt the defendant to respond to its discovery requests, including by filing a motion to compel prior to the instant motion. (Pl. Reply Memo., Exh. 5). Genie's belief that it was not "necessary to reduce the agreement to writing" (Def. Memo. at 13) was incorrect in light of this clearly documented effort, *see Smith*, 154 F.R.D. at 76. Genie's discovery responses were provided after substantial delay and only after court intervention. Therefore, Genie has waived all objections to the discovery requests.

## B. *Similar Models*

Even were Genie permitted to object, its objections would fail as a matter of law. Genie resists discovery of information about lift models other than the PLC–15P on the ground that such discovery is "factually irrelevant and also over broad, as the other models and products do not share the requisite common alleged accident-causing components with the PLC–15P." (Def. Memo. at 2).

In the context of discovery, "different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation." *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 441 (S.D.N.Y.1990); *accord Cheng Chen v. Cincinnati Inc.*, No. 06 CV 3057, 2007 WL 1029193, at *1 (E.D.N.Y. March 30, 2007). Indeed, "discovery of similar, if not identical, models is routinely permitted in product liability cases." *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 126 (S.D.N.Y. 1986). Nonetheless, "it is frequently difficult to judge which of a manufacturer's products are sufficiently similar to the allegedly defective product to be subject to discovery." *Fine*, 133 F.R.D. at 441; *accord State Farm Fire and Casualty Co. v. Black & Decker, Inc.*, Nos. Civ. A. 02–1154, Civ. A. 02–1584, 2003 WL 103016, at *4 (E.D.La. Jan. 9, 2003). The dispute between the parties thus boils down to a question of whether the other lift models are "similar" to the PLC–15P in a way that is "pertinent to the legal issues raised in the litigation." *Fine*, 133 F.R.D. at 441.

In order to establish liability for defective design, a plaintiff must demonstrate "(1) that the product, as designed, posed a substantial likelihood of harm; (2) that it was feasible for the manufacturer to design the product in a safer manner; and (3) that the defective design was a substantial factor in causing plaintiff's injury." *Cuntan v. Hitachi KOKI USA, Ltd.*, No. 06 CV 3898, 2009 WL 3334364, at *5 (E.D.N.Y. Oct. 15, 2009). Here, the plaintiff alleges that the personnel lift was unreasonably dangerous because "the outriggers were easily removable and the subject personnel lift was fully operable without the outriggers attached for stability," a

problem that he alleges could have been corrected by the use of an interlock system, dedicated outrigger storage on the lift, or the provision of adequate warnings about the danger. (Compl., ¶¶ 15, 19). He therefore contends that discovery related to "[a]ll PLC model lifts" as well as the "AWP line of products" is relevant because they are personnel lifts that share the pertinent characteristics of "removable outriggers, ... the feasibility of outrigger storage, ... and warnings to lift operators about the risk of tip-over." (Pl. Memo. at 7, 10). Furthermore, while the PLC models all lack an interlock system, the AWP models do feature interlock technology; the plaintiff contends this renders these models "directly at issue in the instant litigation." (Pl. Memo. at 7, 11).

The defendant protests that the PLC–15P is different from other PLC models because each PLC model is a different size, height, length, and weight; because each "has a unique mast column design," different outrigger length, and a different outrigger footprint; and because some "utilize bracing components as part of the outrigger stability system that are not even used on the PLC–15P." (Def. Memo. at 9–10). The defendant

further contends that the PLC–15P is different from the entire AWP line because it is "a completely different line of products" with a "completely different design," which is larger, heavier, shorter, and has a lower center of gravity, fixed outriggers, and a different outrigger configuration. (Def. Memo. at 6–7). Genie also notes that the AWP models are made from different materials than the PLC line and use different casters and wheels.[1] (Def. Memo. at 7).[2]

These distinctions are not determinative. Although different sizes, construction materials, and outrigger configurations will certainly affect the stability characteristics of a given model of personnel lift, the impact of these differences will provide data that is pertinent to the question of whether the PLC–15P was unreasonably dangerous without an interlock system. Indeed, information related to the stability and safety features of all of these models will shed light on whether the lift at issue "was in fact defective," the "feasibility of alternative designs that the manufacturer might have utilized," and the adequacy of warnings regarding the product's stability and operation without outriggers in place. *Culligan,* 110 F.R.D. at 124.[3]

---

1. The defendant further states that "[t]he AWP lifts were also designed and manufactured to a different ANSI standard" than the PLC line of lifts. (Def. Memo. at 6). However, the affidavit submitted by the Director of Product Safety makes clear that the AWP line complies with an updated version of the exact same ANSI standard with which the PLC line was designed to comply. (Declaration of Richard M. Curtin dated July 6, 2011 ("Curtin Decl."), attached as Exh. 8 to Def. Memo., ¶¶ 5, 11).

2. The defendant suggests that, in order to make a threshold showing of relevance, the party seeking discovery should provide the affidavit of an engineering expert. (Def. Memo. at 5). However, given the relative simplicity of the design concepts being contested here, an expert affidavit is unnecessary. *Cf. Fine,* 133 F.R.D. at 443 (threshold showing "could have been made, for example, through the affidavit of an expert"). This conclusion is bolstered by the defendant's reliance, by way of expert testimony, on a declaration by their Director of Product Safety describing in simple terms the differences between the various lift models' size, materials, and design features. (Curtin Decl.). These differences are not sufficiently complicated to require engineering testimony.

3. The cases cited by the defendant for the proposition that "[p]hysical disparities in size and weight by themselves can make models sufficiently dissimilar in design to warrant denial of a request for discovery" are inapposite. (Def. Memo. at 10–11). In *Rider v. Caterpillar Tractor,* the court declined to compel discovery of tip-over accident information for other models of a lift truck because "fair comparison cannot be made regarding accidents involving a lift truck with a 30,000 pound capacity and accidents involving a [ ] lift truck which has a 3,000 pound capacity." No. Civ. A. 86–2381–S, 1989 WL 106820, at *1 (D.Kan. Aug. 4, 1989). However, the court based its determination in part on the fact that the defendant had previously provided discovery of numerous similar models closer in size to the model at issue. In *Piacenti v. General Motors Corp.,* discovery of a different model's propensity to spin out of control and its "directional stability" was disallowed because, in addition to having "different wheelbases, widths and centers of gravity," the two models had different suspension systems and different engines. 173 F.R.D. 221, 225–26 (N.D.Ill.1997). Furthermore, the prevailing rule in this district is that unless the models "are so dissimilar that [ ] information for them would not be likely to lead to evidence germane to the defect alleged in this

■ Genie contends that, in order to be discoverable, a "shared component must be identical and not merely be generically related." (Def. Memo. at 5). However, this is a brazen mischaracterization of the case law. *Fine*, the case that Genie cites in support of this proposition, in fact holds that "[i]n order for the requested discovery to be relevant, [ ] it must be demonstrated that the designs are truly alternatives and that they are potentially safer," while noting that "the party seeking discovery need not prove its case on the merits in order to obtain disclosure." 133 F.R.D. at 443. Because the stability characteristics of the PLC–15P are precisely what is at issue in this case, other lift models with differing stability characteristics are "truly alternatives" that are "potentially safer" than the lift at issue. Furthermore, this holding is consistent with the general rule that "relevance, for purposes of discovery, is an extremely broad concept," *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y.2004); *accord United Oil Co. v. Parts Associates, Inc.*, 227 F.R.D. 404, 411 (D.Md.2005) ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules."), and that "[o]versimplification of the limits of discovery in highly technical products liability matters is quite sure to deprive plaintiffs of necessary avenues of proof," *Kramer v. Boeing Co.*, 126 F.R.D. 690, 693 (D.Minn. 1989); *accord United Oil Co.*, 227 F.R.D. at 412–13 (recognizing "questions about the similarity of products in terms of relative dangerousness" but concluding "refinement of the issue is for consideration at trial"); *see also Fine*, 133 F.R.D. at 442 ("[T]here is support for the proposition that a plaintiff who raises a design defect claim is entitled to broader discovery than, for example, if the claim were solely one of negligent manufacture.").

Additionally, discovery is appropriate as to the "subsequent design changes" made to develop these later models, even though the defendant does not contest that it was feasible at the time the PLC–15P was designed and manufactured to include an interlock

system. (Walker Letter at 2; Pl. Reply Memo. at 2–3). Although Rule 407 of the Federal Rules of Evidence limits admissibility of evidence of subsequent remedial measures unless " 'feasibility of precautionary measures' " is controverted, it applies only to subsequent changes made in response to " 'an injury or harm allegedly caused by an event.' " *Figueroa v. Boston Scientific Corp.*, No. 00 Civ. 7922, 2003 WL 21488012, at *4–5 (S.D.N.Y. June 27, 2003 (quoting Fed.R.Evid. 407)). The design changes made to the AWP line came years before the accident in this case occurred. (Def. Memo. at 6). Furthermore, what is admissible does not define what is discoverable; discovery need only be "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ. 26(b)(1); *see also Wainwright v. Washington Metropolitan Area Transit Authority*, 163 F.R.D. 391, 396–97 (D.D.C.1995) (granting motion to compel discovery of subsequent remedial measures). This information may indeed prove inadmissible at trial if for no other reason than the likelihood that it will confuse the jury; nonetheless, at the discovery stage, information regarding Genie's development of an interlock is pertinent to the legal issues in dispute in this case.

Finally, the defendant asks that, if discovery of similar models is allowed, it be limited to other accidents where the facts mirror the facts of this case: "a PLC that tipped over while being pushed around when the wheel fell off." (Def. Memo. at 11 & Exh. 5). Unlike at trial, where evidence of similar accidents is admissible only if those accidents are shown to be "substantially similar," a court may allow discovery of similar accidents provided that the "circumstances surrounding the other accidents are similar enough that discovery concerning those incidents is relevant to the circumstances of the instant case." *State Farm Fire and Casualty Co.*, 2003 WL 103016, at *4; *accord United Oil Co.*, 227 F.R.D. at 411–13; *see also Schmelzer v. Hilton Hotels Corp.*, No. 05 Civ. 10307, 2007 WL 2826628, at *2 (S.D.N.Y. Sept. 24, 2007) ("Before prior accidents may be admitted for any purpose, the

case," discovery is permitted as to those models; here, the PLC and AWP lines of personnel lift are

not sufficiently dissimilar to bar discovery. *Culligan*, 110 F.R.D. at 124.

proponent must establish their relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue."); *Veliz v. Crown Lift Trucks,* 714 F.Supp. 49, 51 (E.D.N.Y.1989) (" '[A] court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions. Ordinarily, dissimilarities affect the weight of the evidence, not its admissibility.' " (alteration in original) (quoting *Champeau v. Fruehauf Corp.,* 814 F.2d 1271, 1278 (8th Cir.1987))). Notwithstanding the defendant's contention that only accidents involving tip-over caused by a broken wheel are sufficiently similar under this standard, *all* accidents involving both the PLC and AWP lines of personnel lift in which the list tipped over *or* a wheel broke are sufficiently similar to shed light on the dangerousness of the product at issue and the feasibility of alternative designs. Because the plaintiff has requested discovery primarily related to incidents involving tip-over, his requests are appropriate in scope. (Pl. Memo. at 1–2).

*Conclusion*

For the reasons discussed above, the plaintiff's motion to compel discovery is granted. Genie shall provide complete responses to the plaintiff's discovery requests numbered 7–12, 15–26, 28–29, and 32 within thirty (30) days of the date of this Order.[4]

SO ORDERED.

---

4. In its January 20 response to the plaintiff's discovery requests, the defendant objected to several of the requests on the grounds that they sought documents "containing trade secrets and sensitive proprietary design or commercial information." (Response Production, ¶¶ 9, 10, 11, 15, 17, 18, 22, 24, 26, 29, 32). Genie did not raise this argument in its opposition to the instant motion, and any such concerns may be addressed with a confidentiality order.