Clayton Ralph UITTS and Elva Uitts

v.

GENERAL MOTORS CORPORATION.

Elva E. UITTS, Co-Administratrix of the Estate of Mary Alice Hollingsworth, Deceased

v.

GENERAL MOTORS CORPORATION.

Nos. 72–150, 72–1485.

United States District Court, E. D. Pennsylvania.

April 2, 1974.

Theodore R. Mann, Barry E. Ungar, Philadelphia, Pa., for plaintiffs.

George J. Lavin, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM

HUYETT, District Judge.

The present case is a products liability action arising out of an automobile accident. Plaintiffs have filed a motion to compel discovery seeking to obtain certain information concerning an engine mount recall campaign conducted by General Motors relating to certain vehicles manufactured by defendant.[1] This information, plaintiffs allege, is necessary for preparation of their case. Defendant opposes the discovery as being irrelevant and not reasonably calculated to lead to the discovery of other admissible evidence. For the reasons stated below we deny plaintiffs' motion.

Fed.R.Civ.P. 34 provides that a party may be compelled to produce any materials within its custody or possession "which constitute or contain matters within the scope of Rule 26(b)." Fed.R.Civ.P. 26(b)(1) provides in pertinent part that:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information

---

1. Plaintiffs have requested the following items of discovery:

(1) production in Philadelphia of a 1970 vehicle in all pertinent respects similar to the one involved in this case;

(2) the Product Evaluation Committee minutes regarding the engine mount recall and all documents relating to that recall comparable to the documents which this Court permitted plaintiffs' counsel to examine in relation to the left front spring recall campaign;

(3) produce for deposition Mr. Grant Jackson; and

(4) produce for deposition the person or persons most familiar with the manner in which series or model numbers are designated and differentiated.

sought appears reasonably calculated to lead to the discovery of admissible evidence."

Accordingly, we must determine whether the discovery sought by plaintiffs is relevant or is reasonably calculated to lead to other admissible evidence.

In March, 1970, plaintiff Elva Uitts was operating a 1970 Chevrolet Blazer, K–10 truck which, she alleges, went out of control without any warning and swerved sharply to the left across the highway and crashed into an embankment. Plaintiffs' theory of recovery is based upon Restatement of Torts (Second) § 402(A), alleging defective design, manufacture, testing, inspection, or assembly of the vehicle. Originally plaintiffs theorized a defective condition of the left front spring main leaf as being the cause for the sudden swerving to the left. Based on this premise plaintiffs, earlier in the litigation, requested discovery of all information that defendant possessed concerning similar accidents in vehicles manufactured by defendant with an identical spring. The requested discovery pertained not only to the 1970 K–10 Blazer (the model which is the subject of this litigation) but also to the 1969 and 1971 K–10 Blazer as well as the K–20 Blazer model for 1969, 1970 and 1971. In addition, plaintiffs requested information from defendant concerning a recall campaign of these vehicles pertaining to the correction of this component.

By Memorandum and Order we granted the plaintiffs' request holding that "similar accidents with *identical* equipment are relevant to the determination of causation." Uitts v. General Motors Corp., 58 F.R.D. 450, 452 (E.D.Pa.1972) (Emphasis added). Now after two years of ongoing discovery, and while not abandoning this original theory, plaintiffs now seek to introduce a new alternative possibility as to the cause of the accident and ask this court to allow their embarkation upon an exploratory journey to determine its plausibility.

More specifically, plaintiffs contend that the left front engine mount severed prior to impact causing the vehicle to involuntarily accelerate and that this led directly to the accident. They contend that defendant conducted an engine mount recall campaign and that the phenomenon which precipitated this recall is similar to that alleged by plaintiffs, namely, the vehicle's sudden veering to the left. Plaintiffs argue, therefore, that they should be entitled to the materials relating to the engine mount recall campaign on the same basis that they were entitled to the recall campaign involving the left front spring.

There is, however, a major difference between the two recall campaigns as they relate to this case. Although the plaintiffs' vehicle was one of the models involved in the recall campaign concerning the correction of the left front spring, the second recall campaign relating to the engine mounts did not involve the K–10 Blazer.

Plaintiffs, in support of their theory, allege that the vehicle involved in the accident was actually no different than those vehicles recalled in the engine mount campaign.[2] They contend that the National Automobile Dealers' Association Handbook (NADA Handbook) does not include a K–10 model vehicle, but does include a C–10 model vehicle with the explanation that a vehicle has a KS prefix when equipped with automatic transmission. They quote a letter from defense counsel which indicates that the prefix "K" indicates a four-wheel drive vehicle while "C" indicates a two-wheel drive vehicle. Plaintiffs then cite testimony of Grant Jackson, Chairman of the Product Evaluation Commit-

---

**2.** The model types subject to the recall campaign were those designated with the prefix "C", however, as noted later in the Opinion, not all "C" type models were subject to the recall.

tee of General Motors,[3] which, they contend, indicates that the C–10 may have four-wheel drive. These facts, they argue, demonstrate that the C–10 with automatic transmission is identical to the K–10 with automatic transmission and therefore the recall campaign did or should have applied to the Uitts' vehicle.

Defendant, in opposition to plaintiffs' motion, has submitted the affidavit of Gerald A. Confer, an engineer with General Motors Corporation. Affiant explains that the "K" prefix in the Uitts model number, KE10916, and in the vehicle identification number, KE160F164460, designates that this is a vehicle with four-wheel drive. Affiant further explains that a "C" prefix in a similar model number or vehicle identification number would mean that the vehicle is one with two-wheel drive. Mr. Confer also states that the 1970 K model vehicles were not subject to the engine mount recall campaign.

Defendant also relies upon the deposition of Grant Jackson. In his deposition, taken under oath, Mr. Jackson also states that the K model vehicles were not involved in the engine mount recall campaign.[4] Mr. Confer and Mr. Jackson both state that the reason for not including the K models in the campaign was that the recall involved only vehicles equipped with a three-point (triangular) mounting system.[5] They both also state that the plaintiff's K–10 vehicle was equipped with two front engine mounts and at least two rear transmission mounts. In addition, Mr. Confer, in his affidavit, states that those C model vehicles which employed a four-point mounting system were not subject to the recall, but rather only those with the three-point triangular system.

Defendant, in a hearing held by us in open court concerning this present mo-tion, produced a photographic slide of the Uitts vehicle after the accident. The slide depicts the two rear transmission mounts contained on the vehicle. Since it is unquestioned that all vehicles possess two front engine mounts, it would appear that the Uitts' vehicle possessed at least four engine mounts and would not, therefore, have been subject to the recall campaign.

Aside from plaintiffs' theory relating to the designation of the prefixes, the evidence of the defendant has been uncontroverted. From all the evidence presented before us, it is evident that the only relevant consideration in connection with the engine mount recall campaign is the number or arrangement of the engine mounts. The designation or letter prefix of the vehicle, in and of itself, becomes immaterial. Since plaintiffs have not presented any opposing documentation, expert testimony or affidavits or anything which in any way controverts the defendant's evidence or testimony concerning the number of engine mounts, we conclude that the desired discovery would not be relevant or reasonably calculated to lead to the discovery of admissible evidence. Reliance is placed upon Prashker v. Beech Aircraft Corp., 258 F.2d 602 (3 Cir. 1958). In Prashker, the Third Circuit Court of Appeals upheld exclusion of evidence relating to accidents involving a certain type of aircraft but which for purposes of that case could be considered a dissimilar aircraft. The court in that case stated that evidence of accidents involving such a dissimilar aircraft would not be material. It was only reports concerning those models which were identical for the purposes of the case which could be relevant and material. We conclude that the vehicles subject to the en-

---

3. The Product Evaluation Committee is that body concerned with the investigations and final decisions relating to recall campaigns of General Motors vehicles.

4. Jackson deposition, pp. 50–51.

5. This triangular mounting system consists of two (2) engine mounts in the front and one (1) transmission mount at the rear of the engine.

gine mount recall campaign were dissimilar from the Uitts' vehicle.

In passing we note that this case is now more than two years old. Counsel and this Court [6] have been involved with extensive discovery for a considerable period of time. The case has been on the Court's trial list for several months and the parties have twice been directed to file Final Pretrial Orders. The requested discovery would only unduly delay the trial without any apparent fruitfulness to the plaintiffs' theory.

Plaintiffs' motion to compel discovery was denied in open Court on March 21, 1974 following a full hearing on plaintiffs' motion. This Memorandum sets forth in further detail my reasons for denial of plaintiffs' motion.

It is so ordered.

---

6. We have held several conferences, in Chambers, involving various requested discovery as well as an *in camera* inspection of the Minutes of the Product Evaluation Committee regarding the left front spring recall campaign.