**Gaylon HOFER, Appellant,**

v.

**MACK TRUCKS, INC., Appellee.**

**No. 91–3428.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1992.

Decided Dec. 14, 1992.

Rehearing and Rehearing En Banc Denied Feb. 2, 1993.

Gerald L. Reade (argued), Yankton, SD, James R. Harr (on brief), Tripp, SD, for appellant.

Michael J. Schaffer (argued), Sioux Falls, SD, Marie E. Hovland (on brief), Sioux Falls, SD, for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

In this diversity case, Gaylon Hofer ("Hofer") brought suit against Mack Trucks, Inc. ("Mack"), alleging negligence and strict liability in the design, manufacture, testing, and marketing of a Mack truck and seeking punitive damages. Hofer appeals the judgment, entered upon a jury verdict that Hofer is not entitled to any recovery, and from the district court's [1] denial of Hofer's Motion for a New Trial. On appeal, Hofer asserts that the court erred with regard to a discovery ruling and several evidentiary rulings, in its refusal to submit the issue of punitive damages to the jury, and in its refusal of certain proposed jury instructions. Hofer further asserts that the closing argument of counsel for Mack was prejudicial. We affirm the judgment of the district court.

I.

FACTS

Hofer was rendered a paraplegic as a result of the rollover of a newly designed, 1985 Mack truck on October 11, 1985. The sleeper compartment mattress sits on two removable base panels which are not secured; under each base panel is a storage compartment, designed to allow inside access from the sleeper compartment. Hofer was asleep in the sleeper compartment of the cab, face down with his head behind the

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

driver's seat, when the truck left the highway, rolled onto its right side and skidded to a stop. At trial, Hofer presented the theory that the mattress and the left base panel dislodged during the accident, allowing a heavy tool box to eject from within the storage compartment into the sleeper compartment, striking Hofer in the chest, and causing a cord lesion and the resultant paralysis.

Mack presented evidence refuting Hofer's causation theory. Mack argued that Hofer flew off the mattress and fell seven to ten feet to the right side of the truck, landing on his buttocks. The force exerted on his spine caused a compression fracture and, as he then flexed forward, the spine was severed, causing paralysis. Mack further contended that the mattress was between Hofer and the storage compartment, shielding him from the toolbox.

## II.

### DISCOVERY

*Predecessor Truck Designs*

The subject Mack truck was a Model MH. Hofer sought discovery relating to predecessor designs (specifically Models F and W) manufactured since 1975, citing numerous design and materials changes. Hofer desired to discover information which would support a showing that Mack departed from a prior, safer design, the reasons for the departures, and any comparisons by Mack of the crashworthiness and safety of the models. Hofer's motion to compel was denied by the district court, which essentially stated that the requested materials were neither relevant nor discoverable.

■ Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D.Minn.1989) (and cases cited therein). While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122 (S.D.N.Y.1986), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

■ In this case, Hofer articulated two reasons for discovery about Mack's predecessor designs and the departures therefrom. Hofer refers to a nonspecific allegation that the change in overall construction, from reinforced steel and aluminum to fiberglass, affected the general crashworthiness of the model MH truck. More specifically, Hofer states that, "The matter of a departure from a fully enclosed storage compartment in constructing the MH model truck cab was at the core of Hofer's claim." Brief for Appellant at 27.

First, it is clear that the differences and departures in the design of the storage compartment were fully explored at trial. (It should be noted that Mack did agree to produce the designs, diagrams, and blueprints of the bunk base (storage compartment) portion of the predecessor models. The record reflects this agreement; whether or not the production actually took place is not clear from the record before us.) Second, two of Hofer's experts independently located, examined, and photographed actual F and W truck models. In addition, Hofer's primary expert stated that he saw diagrams of the two predecessor models. The differences in construction were thus examined and analyzed, and were explained to the jury at trial.

In previous cases, decided in a variety of jurisdictions, the courts have set forth no black letter rule of law regarding discovery of predecessor models in products liability cases, other than to state that discovery of similar, if not identical, models is generally

permitted. *Culligan,* 110 F.R.D. at 126. ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation." *Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439, 441 (S.D.N.Y.1990).) Rather, the courts have undertaken a fact specific determination of the extent of the similarities or dissimilarities, and have inquired about the basis for the discovery request. We do the same here.

Sufficient similarities have been found to exist where it was alleged that three-wheel all-terrain vehicles are inherently unstable, *Culligan, supra;* where a plaintiff maintained that a redesigned motor mount that failed in his car had not eliminated the defects found in earlier models, *Swain v. General Motors Corp.,* 81 F.R.D. 698 (W.D.Pa.1979); and where an airplane engine failure was alleged, the area was highly technical and complex, and the defendant controlled exclusively all access to the technical data, *Kramer v. Boeing Co.,* 126 F.R.D. 690 (D.Minn.1989). *See also Josephs v. Harris Corp.,* 677 F.2d 985 (3d Cir.1982); *Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613 (5th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); *Uitts v. General Motors Corp.,* 58 F.R.D. 450 (E.D.Pa.1972). On the other hand, discovery has been denied where the predecessor models did not share pertinent characteristics with the products at issue. Sufficiently dissimilar characteristics have been found to exist where a plaintiff sought information about a vehicle recall, but the models recalled did not have the same component as the one at issue in the litigation, *Uitts v. General Motors Corp.,* 62 F.R.D. 560 (E.D.Pa.1974), where the court permitted discovery of three model years immediately preceding the model at issue, but denied discovery as to a still earlier model because it was too dissimilar, *Prashker v. Beech Aircraft Corp.,* 258 F.2d 602 (3d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 236, 3 L.Ed.2d 230 (1958), and where a plaintiff was not able to make even a threshold showing that airplane bladder tanks or wetwing fuel systems were potential substitutes, or potentially safer than, metal fuel tanks, *Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439 (S.D.N.Y.1990). *See also Butkowski v. General Motors Corp,* 497 F.2d 1158 (2d Cir.1974); *Frey v. Chrysler Corp.,* 41 F.R.D. 174 (W.D.Pa.1966).

In the instant case we are satisfied that the truck models. F and W are sufficiently dissimilar in design from the model MH that a burdensome production of documents regarding the design minutiae of those earlier models would not have yielded information which would have supported Hofer's claim that the model MH truck cab was defective.

◼ Hofer's argument regarding crashworthiness is not persuasive. Having discovered all possible information regarding the model truck at issue (MH), it was the task of Hofer's experts to develop and to demonstrate the alleged defects *in that model.* As discussed above, Hofer had sufficient information about the F and W models to demonstrate to the jury the differences in overall construction. However, no specific allegations supporting the need for further discovery of information were made. For example, discovery may be allowed where a plaintiff alleges that the defendant was on notice of a defect, that an alternative design was feasible and the defendant had knowledge of the same, that a defendant did not eliminate a previously occurring defect in design, or that previous, similar accidents related to the accident at issue had occurred. Hofer's stated desire to argue that Mack was motivated purely by economics, without regard to safety risks, was completely unsupported and was simply not sufficient to allow an expedition into predecessor models. Hofer relies heavily on *Culligan, supra,* for support of his arguments. However, the reasoning of the court in *Culligan* in its discussion of post-manufacturing testing is not applicable to the instant case.

◼ If a party can demonstrate a gross abuse of discretion by the trial court (bearing in mind that in the discovery arena the trial judge's discretion is particularly

broad), *Cook v. Kartridg Pak Company,* 840 F.2d 602, 604 (8th Cir.1988) then the complaining party must also demonstrate prejudice. *See Ranger Transportation, Inc. v. Wal–Mart Stores,* 903 F.2d 1185, 1187 (8th Cir.1990). The district court clearly did not abuse its discretion in this instance, and Hofer has not shown the requisite prejudice.

## III.

## EVIDENTIARY ISSUES

### A. *Workers' Compensation*

■ Hofer complains of three separate instances during trial where Mack raised the issue of collateral sources, specifically workers' compensation. First, during the cross-examination of Hofer's witness, Norman Breen (a truck driver), Mack's counsel questioned Breen on the subject of his prior representation by Hofer's counsel in a workers' compensation case arising out of a trucking accident. Next, during Mack's cross-examination of Hofer, Hofer was asked if he knew the cost of a specific medication for which he has a prescription. Hofer replied that he did not, but that he simply called in an order and that it was delivered to him. And finally, Dr. Ralph Brown, an economist and one of Hofer's experts, was questioned about Hofer's annual cost of care, reduction to present value, and the statutory discount rate. This elicited a response from Hofer's own witness that the discount rate was applicable only to workers' compensation lump sum payments.

Hofer alleges that all three questions were designed to improperly inform the jury of collateral sources available to Hofer, and that the cumulative effect of the three instances was to prejudice the jury, resulting in reversible error. We recognize that, under South Dakota law, the introduction of workers' compensation into a trial constitutes error. *Stratton v. Sioux Falls Traction System,* 49 S.D. 113, 206 N.W. 466 (1925). Here, however, the three areas of testimony complained of simply do not rise to the requisite level, individually or cumulatively. The references were slight,

if not downright obscure. (The first, in particular, is noteworthy as Mack properly impeached Breen regarding his identity of interest with Hofer's counsel.) No evidence demonstrating lack of good faith on the part of Mack's counsel has been shown. We rely upon the judgment of the district court, which is in the best position to evaluate such questions, that the statements elicited by defense counsel were not prejudicial. *See Harris v. Zurich Insurance Co.,* 527 F.2d 528, 531 (8th Cir.1975).

### B. *Cross-examination of Dr. Brown*

■ Dr. Brown was called by Hofer to testify about Hofer's lost future income (based on claims that Hofer is permanently, totally disabled and completely unemployable), and the reduction of future medical expenses to present value. Hofer maintains that Mack improperly questioned Dr. Brown by delving into the issues of his preliminary calculations of Hofer's medical expenses (Hofer presented at trial vastly different calculations performed by a different expert), and Dr. Brown's familiarity with another disabled individual who is employed and productive.

The jury verdict form is crystal clear. The jury found in favor of Mack and did not consider the issue of damages, so this court need not reach the merits of Hofer's arguments regarding damages. Even in the event of error, Hofer was not prejudiced in any way and the error was harmless.

## IV.

## PUNITIVE DAMAGES

■ South Dakota law strictly confines instances in which a party may seek punitive damages. Even before permitting discovery on a punitive damages claim, a court must find, based on "clear and convincing evidence", that there is a reasonable basis to believe that the defendant has acted in a "willful, wanton or malicious" manner. *Vreugdenhil v. First Bank,* 467 N.W.2d 756 (S.D.1991); *Fiegen v. North Star, LTD.,* 467 N.W.2d 748 (S.D.1991);

*Flockhart v. Wyant,* 467 N.W.2d 473 (S.D. 1991).

■ After hearing all evidence presented by Hofer at trial, the district court determined that there was no support for a punitive damages claim, and refused to submit the issue to the jury. Our review of the record indicates that the district court did not abuse its discretion. There is ample evidence that Mack adequately "crash tested" the MH model and a complete absence of evidence that Mack had knowledge of any unreasonable risks or that it acted maliciously or even indifferently in its production of the MH truck cab.

As indicated above, further discussion of the legal precedents on this issue is unwarranted in light of the fact that the jury found no liability and did not reach the issue of damages. *See Fluckey v. Chicago & Northwestern Transportation Company,* 838 F.2d 302, 303 (8th Cir.1988); *Green v. American Airlines, Inc.,* 804 F.2d 453, 456 (8th Cir.1986).

## V.

## JURY INSTRUCTIONS

### A. *Compliance With Federal Regulations*

■ Counsel for Mack referred during trial to Mack's compliance with federal safety standards. In response, two of Hofer's experts opined that such safety standards are minimal standards and that manufacturers have a duty to go beyond the standards and to manufacture the safest possible truck.

Hofer now contends that it was prejudicial error not to submit proposed jury instruction 24, as follows, to the jury.

Compliance with federal motor vehicle safety standards is not, in and of itself, sufficient to exempt a manufacturer from liability.

Standing alone, this is a correct, but not complete, statement of the substantive South Dakota law. Had the court accepted the proposed instruction, Mack would have been entitled to a further instruction stating that the jury may consider Mack's compliance with standards in determining whether it failed to use reasonable care in connection with the performance of its duties, and was thus negligent. *See Zacher v. Budd Co.,* 396 N.W.2d 122, 133–34 (S.D.1986). The absence of both portions of the instruction did not create prejudicial error in this case. While Hofer contends that this jury was left with the impression that Mack exercised reasonable care through its compliance with safety standards, we express grave doubts that this was at the root of the jury's decision, particularly given the exchanges on the subject during the trial. *E.I. duPont de Nemours & Co. v. Berkley and Co., Inc.,* 620 F.2d 1247, 1258 n. 8 (8th Cir.1980) (even if the court erred in instructing the jury, a new trial is not required unless the jury was significantly influenced by issues erroneously submitted to it). Reviewing the jury instructions as a whole, *see Davis v. Merrill Lynch, Pierce, Fenner & Smith,* 906 F.2d 1206 (8th Cir.1990), the absence of proposed instruction 24 was not error, and the court did not abuse its discretion in refusing to submit the instruction to the jury.

### B. *Crashworthiness*

■ Seven of Hofer's proposed jury instructions were taken nearly verbatim from the language of the landmark case, *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir.1968). Often cited, and referred to variously as the seminal case on crashworthiness, second collision, or enhanced injury, *Larsen* stands for the proposition that an automobile manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. *Larsen,* 391 F.2d at 502. *See Wagner v. International Harvester Co.,* 611 F.2d 224 (8th Cir.1979). This holding was in response to the argument of General Motors that negligent design is not actionable where the alleged defective design is not a causative factor in the accident. General Motors contended that it had no duty to design and manufacture a vehicle which was "safer" to occupy during a collision.

While much ado was initially made about second collision cases, the *Larsen* court itself recognized and stated that its decision was not especially innovative. The court stated, "The duty of reasonable care in design rests in common law negligence that a manufacturer of an article should use reasonable care in the design and manufacture of his product to eliminate any unreasonable risk of foreseeable injury.... [t]he courts since *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916) have held that a manufacturer of automobiles is under a duty to construct a vehicle that is free of latent and hidden defects." *Larsen,* 391 F.2d at 503. The key then to the *Larsen* decision is the duty of non-negligent design given the foreseeability of the risk of injury in the event of collision, rather than the foreseeability of the collision itself (nearly a given in today's society). *See Robbins v. Farmers Union Grain Terminal Ass'n.,* 552 F.2d 788, 794 n. 15 (8th Cir.1977).

In this case the court submitted instructions to the jury which clearly set forth Mack's duty with regard to design, and correctly defined common law negligence. While we agree that this case can technically be described as a crashworthiness case, this does not, a fortiori, mean that Hofer is entitled to the specific jury instruction language of his choice.

> [W]hile a litigant is entitled to have the trial judge advise the jury of his theories and claims...., the actual form of the instructions is within the trial court's discretion. Counsel cannot, therefore, require that an instruction be rendered in the categorical language that he fancies would be most beneficial to his cause.

*Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1289 (5th Cir.) (footnote omitted), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974) (quoted at *Vanskike v. ACF Industries, Inc.,* 665 F.2d 188, 205 (8th Cir.1981)). This jury was fully informed of the factors which were probative of the issue at hand, *Vanskike,* 665 F.2d at 201, and the instructions, taken as a whole, fairly and adequately submitted those issues. *Davis,* 906 F.2d at 1220.

We can envision a situation where it would be reversible error not to specifically instruct the jury on the legal principles set forth in *Larsen. See Mitchell v. Volkswagenwerk, AG,* 669 F.2d 1199 (8th Cir. 1982) (two specific causative factors were alleged, there were two defendants, and apportionment of damages was at stake.) However, despite Hofer's protestations throughout this appeal that Mack has attempted to unacceptably narrow the allegations to the design of the sleeper and storage compartments, we note that the case was submitted to the jury on that *single* theory. Jury Instruction 8, which has not been assigned as error on appeal, succinctly informed the jury that Hofer alleged that he was injured because of the defective condition of, and/or Mack's negligence with regard to, the mattress base panels and the storage compartment. The inclusion of the requested instructions is extremely unlikely to have changed the jury's verdict. Even if the court did err, Hofer cannot affirmatively demonstrate that he was prejudiced. *See Vanskike,* 665 F.2d at 203; *Lynch v. Travelers Indemnity Co.,* 452 F.2d 1065, 1067 (8th Cir.1972); *County of Todd v. Loegering,* 297 F.2d 470, 478–81 (8th Cir.1961).

## C. *Jury Instructions 14 and 29*

Jury Instruction 14 refers to "[t]he conduct of any defendant" and to "any controlling, intervening cause" in its discussion of proximate cause. Hofer maintains that this instruction contains reversible error on the grounds that: 1) the conduct of the defendant is immaterial in a strict liability action, and 2) the jury could have understood "intervening cause" to mean the actions of the driver of the truck.

Hofer finally assigns error to Jury Instruction 29, which states, in essence, that Hofer need not eliminate all other possible explanations of causation in order to prove his theory of causation. Mack posited other possible explanations for Hofer's injuries and, therefore, Hofer argues that the instruction is "essential" to a fair submission of the case.

We have reviewed the jury instructions as a whole, the evidence presented, and the parties' legal arguments on appeal, and we determine that the court did not abuse its discretion in its submission of instructions 14 and 29. Again, the issues were fully and fairly presented to the jury. There is no merit to a further, elongated discussion of these particular issues.

## VI.

### CLOSING ARGUMENT

 Hofer argues that Mack's counsel's entire closing argument was punctuated by unwarranted denunciations of Hofer's counsel, designed to inflame the jury against Hofer, his case, and his counsel. While such tactics are certainly questionable, and will constitute reversible error when they are plainly unwarranted and clearly injurious, *Vanskike v. Union Pacific R. Co.*, 725 F.2d 1146, 1149 (8th Cir. 1984), in this instance, the parties have lost sight of the difference between a hard fought battle with vigorous representation by the attorneys, and personal attacks clearly calculated to inflame and prejudice the jury. We take particular note that, with one specific exception, Hofer's counsel failed to object to the closing arguments made by Mack's counsel. While Hofer argues that interrupting opposing counsel during argument is a hazardous thing to do, and that moving for a mistrial at the close of argument would have negated the tremendous personal and financial resources that had been put into the trial, it was, nevertheless, his responsibility to note his exception and to preserve his objections during the trial. In the very least, Hofer should have requested some curative or remedial action by the court before the case was submitted to the jury. *Thomson v. Boles*, 123 F.2d 487, 495–96 (8th Cir. 1941), *cert. denied*, 315 U.S. 804, 62 S.Ct. 632, 86 L.Ed. 1204 (1942). We will not disturb this verdict on the grounds of claimed misconduct of counsel, particularly where the trial court has refused to do the same. "The district court is in a better position to determine whether prejudice has resulted from a closing argument, and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion." *Vanskike*, 725 F.2d at 1149. *See also Geimer v. Pastrovich*, 946 F.2d 1379 (8th Cir.1991). The claimed errors in this instance did not effect the substantial rights of the parties, and did not so create undue prejudice or passion as to unduly taint the proceeding. *See Matthews v. CTI Container Transport International, Inc.*, 871 F.2d 270 (2d Cir.1989). The court did not abuse its discretion in refusing to grant a new trial on the basis of Mack's closing argument.

## VII.

For the foregoing reasons, the judgment of the district court is affirmed in all respects.