**Michelle L. PIACENTI, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, a Delaware corporation, Chevrolet–Geo Motor Division, a wholly-owned subsidiary of General Motors Corporation, Suzuki Motor Company, Ltd., a Japanese Corporation, and Cami Automotive Manufacturing, Inc., a Canadian Corporation, Defendants.**

No. 94 C 2305.

United States District Court,
N.D. Illinois,
Eastern Division.

April 22, 1997.

As Amended June 10, 1997.

Christopher B. Meister, Pavalon & Gifford, Chicago, IL, for Plaintiff.

Edward P. Gibbons, Lord, Bissell & Brood, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

GUZMAN, United States Magistrate Judge.

Pending is Plaintiff Michelle L. Piacenti's ("Piacenti") renewed motion to compel discovery of Defendants General Motors Corporation ("GM") and Suzuki Motor Company's ("Suzuki") responses to plaintiff's supplemental interrogatories and supplemental request for production concerning the Suzuki Samurai. For the reasons set forth below, this motion is hereby denied.

### BACKGROUND FACTS

On May 9, 1994, Plaintiff Piacenti filed a complaint alleging strict liability and negligence against defendants. Specifically, Piacenti alleges that defendants manufactured her 1991 GEO Tracker, that on April 16, 1992, Piacenti was driving the vehicle when it unexpectedly spun out of control on a bridge and collided with oncoming traffic. Piacenti alleged that her Tracker was defective for reasons that included: it had a propensity to spin out of control, it lacked directional stability, it had unexpected lateral slewing and sudden wheel lock-up, it had unpredictable tire lock-up, it had controllability problems due to its high center of gravity, short wheelbase, narrow track, firm spring suspension and brake system, it had unpredictable handling that could cause the vehicle to go out of control, it lacked crashworthiness, defendants failed to provide proper warnings regarding the above defects and defendants failed to adequately test the 1991 Tracker regarding its instability and tendency to spin out of control.

On March 14, 1996, Piacenti served GM and Suzuki Supplemental Interrogatories and Supplemental Request for Production regarding any and all documents concerning the Suzuki Sidekick, Suzuki Samurai, Vitara, GEO Tracker, and Chevrolet S–10 Blazer. GM did not respond by April 14, 1996. After a telephone conversation with Defendants' counsel, Edward P. Gibbons, Plaintiff's counsel, Chris B. Meister, agreed to extend the time period for GM to respond for 45 days, until May 31, 1996. On June 21, 1996, Meister telephoned Gibbons and was led to believe that Defendants' response would be forthcoming by the first week of July, 1996. On July 9, 1996, Meister again telephoned Gibbons and was led to believe that a response would be forthcoming by July 22, 1996. On July 22, 1996, Meister telephoned Gibbons again and was led to believe that a response from Defendants would be forthcoming by July 24, 1996. On July 26, 1996, Meister sent a letter to Gibbons stating that Plaintiff intended to file a Motion to Compel if a response was not forthcoming. Defendants had not responded to the supplemental discovery request by January 16, 1997.

A status hearing was held on September 25, 1996. At this hearing, this Court gave Defendant GM 10 days to respond to the production request. On Friday, October 4, 1996, Gibbons called Meister to inform him that Defendant's response would not be complete by October 5, 1996. On December 31, 1996, Meister wrote to Gibbons regarding Plaintiff's refiling of her Motion to Compel discovery regarding the Suzuki Samurai. On January 16, 1997, Plaintiff's motion to Compel was denied without prejudice to renewing the motion after filing with this Court an opinion from an expert verifying that the Geo Tracker/Suzuki Sidekick are sufficiently similar to the Suzuki Samurai that tests performed on the Samurai would be relevant in determining liability with respect to the Geo Tracker. This Court noted that the opinion should specify how useful such information would be and why the test results of the performance of the Samurai would be of any more help in determining liability regarding the Tracker than the same type results from any other vehicle manufactured by defendants.

In response, Plaintiff submitted her Renewed Motion to Compel along with the Affidavit of Robert L. Anderson on February 11, 1997. Thereafter, on February 20, 1997, Plaintiff submitted the Affidavit of John Marcosky. The Affidavit of Anderson states that he is an expert in sport utility vehicles including the 1991 Geo Tracker and Suzuki Samurai. He concluded by stating that despite the different models of sport utility vehicles, both the Samurai and the Tracker share similar design characteristics and market niches and that the requested discovery regarding the Samurai is directly relevant in proving the defects alleged in plaintiff's complaint.

The Affidavit of Marcosky stated that he is an expert in sport utility vehicles including the 1991 Geo Tracker and Suzuki Samurai. He stated that "[i]t is apparent the Tracker multi purpose vehicle is more closely configured to the Suzuki Samurai in geometric size and weight than the Chevrolet S–10 Blazer." He concluded by stating that the documents requested regarding the Suzuki Samurai, Tracker and General Motors S–10 Blazer are directly relevant in proving the defects alleged in plaintiff's complaint.

On March 27, 1997, Defendants GM and Suzuki filed their Response to Plaintiff's Motion to Compel Suzuki Samurai Documents. Defendants stated that they have produced over 10,000 documents in response to Piacenti's requests. However, they have not produced documents relating to the Suzuki Samurai because these documents are not relevant to the issues in this case and because such production would be overly burdensome. Included in Defendants' Response was the Declaration of Yoshihisa Inoue. Inoue declared that he was familiar with the design of the Geo Tracker and the Suzuki Samurai. He stated that the Samurai was introduced in 1985 and sold in the United States until 1995. The Tracker was introduced in 1988. Both vehicles were sold simultaneously until 1995. The Tracker was not intended as a replacement or successor to the Samurai. Inoue further stated that the Tracker/Sidekick was designed as a more upscale and expensive vehicle than the Samurai. The Tracker has many luxury features that were not offered on the Samurai, including automatic transmission, power steering, windows, locks, mirrors, etc.

The differences between the Tracker and the Samurai, according to Inoue, include: engine size, center of gravity, wheelbase, track, length, width, and suspension system. Specifically, the Tracker has a four cylinder, nearly 1.6 litre engine, the Samurai has a 1.3 litre engine. The soft-top, four-wheel drive version of the Tracker has a 605 mm center of gravity, the Samurai has a 573 mm center of gravity. The Tracker has a wheelbase of 2,200 mm, the Samurai has a wheelbase of 2,030 am. The Tracker has i track of 1,395 mm in the front, 1,400 mm in the rear while the Samurai has a track of 1,300 mm in the front, 1,310 mm in the rear. The length of the Tracker is 3,620 mm while the length of the Samurai is 3,430 min. The width of the Tracker is 1,630 mm while the width of the Samurai is 1,530 mm. The Tracker is equipped with McPherson Separated Coil Spring Struts while the Samurai is equipped with leaf springs.

### DISCUSSION

Federal Rule of Civil Procedure 33(a) provides that a party may serve on any other party written interrogatories to be answered by the party served. Federal Rule of Civil Procedure 34(a) provides that a party may serve on any other party a request to produce any designated documents. Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." While it is true that relevance in discovery is broader than that required for admissibility at trial, "'the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.'" *Baxter Int'l Inc. v. Cobe Labs., Inc.*, 1992 WL 211075, at *2 (N.D.Ill. Aug. 24, 1992) (quoting *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 159 (E.D.N.Y. 1982)); *Cadillac Ins. Co. v. American Nat'l*

*Bank of Schiller Park,* 1992 WL 58786, at *4 (N.D.Ill. Mar. 12, 1992). Moreover, the scope of discovery is generally limited to information "which is relevant to the subject matter involved in the pending action." *National Paint & Coatings Ass'n v. City of Chicago,* 147 F.R.D. 184, 185 (N.D.Ill.1993) (citing Fed.R.Civ.P. 26(b)(1)). Furthermore, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery. *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1992).

Several factually analogous cases illustrate how courts have considered discovery requests similar to the ones at issue here. Although these cases are not binding, they are persuasive authority as to how this discovery dispute should be resolved.

The court in *Rider v. Caterpillar Tractor* recognized that discovery of lift truck models **substantially similar** to the lift truck at issue is allowed. 1989 WL 106820, at *1 (D.Kan. Aug. 4, 1989). In that factually similar case, plaintiff sought discovery of accident reports for all models of defendants' lift trucks bearing the "T" designation. *Id.* The court there allowed discovery not of all models manufactured by defendant, but only those models that were substantially similar to the model involved in the accident in question. *Id.* The court noted that the lift trucks with the "T" designation varied from ones with a 2,200 pound lift capacity to ones with 30,000 pound lift capacity. *Id.* Also, the overall width of these lift trucks varied from 39.1 inches to 62 inches. *Id.* The court found this disparity in lift capacity and size prevents the finding that all lift trucks with the "T" designation are substantially similar to the T–30C lift truck involved in the accident in question. *Id.* The court there noted that the defendant's expert stated by affidavit that "[c]omparision of other tipover incidents involving other models of lift trucks is truly the equivalent of comparing apples and oranges, due to the differences in wheelbase, width, speed capabilities, mast types, center-of-gravity locations, and operator's seat loca-

tion." *Id.* Therefore, the court denied the plaintiff's motion to compel. *Id.* at *2.

The court in *Schaap v. Executive Indus., Inc.,* 130 F.R.D. 384 (N.D.Ill.1990), noted that information concerning similar model motor homes that have the **same component parts or structural defects** may shed some light on whether defendants breached their contract with plaintiffs due to substantial defects in plaintiffs' motor home. *Id.* at 386, 387. There, plaintiffs purchased a 1989 Prestige model motor home. Therefore, the court allowed discovery of earlier models of Prestige motor homes manufactured by defendant since 1982. *Id.* at 386.

The court in *Hofer* noted that discovery has been denied where the predecessor models did not share pertinent characteristics with the products at issue. *Hofer,* 981 F.2d at 381. In that case, discovery was denied where plaintiff sought discovery relating to truck model, F and W. *Id.* at 380. The court found that the two models were sufficiently dissimilar in design from the model MH at issue that documents regarding those earlier models would not have yielded information which would have supported plaintiff's claim that the model MH truck cab was defective. *Id.* at 381. In the discovery arena the trial judge's discretion is particularly broad; thus, the district court clearly did not abuse its discretion in this instance. *Id.* at 381–82.

The court in *Culligan v. Yamaha Motor Corp.,* 110 F.R.D. 122 (S.D.N.Y.1986), held that the requested information about post-manufacture testing was relevant and discoverable even though it may deal with models other than the Model YT–225 at issue, **unless** it is demonstrated that the other models are so **dissimilar** that testing information for them would not be likely to lead to evidence germane to the defect alleged in this case; i.e., whether the ATV was inherently unstable. *Id.* at 124. There, the court allowed discovery of post-manufacture testing and pre-manufacture testing because Yamaha failed to demonstrate any pertinent differences between Model YT–225 and other ATV models. *Id.* at 126.

Lastly, the court in *Uitts v. General Motors Corp.,* 58 F.R.D. 450 (E.D.Pa.1972), held that discovery of all information relating to

similar accidents in vehicles manufactured by defendant with a spring, **identical** to the one at issue was allowed. *Id.* at 451. There the plaintiff alleged that her 1970 Chevy Blazer, K–10 went out of control because of a defective front leaf spring. *Id.* The court allowed discovery of 1969–71 Blazers, models K–10 and K–20 stating that defendant had not presented any claim that the left front spring main leaf, which is relevant for purposes of this case, is not identical in the models named by plaintiff. *Id.* at 452.

Here, plaintiff alleges that her 1991 GEO Tracker is defective for reasons that include: it has a propensity to spin out of control, it has controllability problems due to its high center of gravity, short wheelbase, narrow track, firm spring suspension and brake system and it lacks directional stability. Plaintiff seeks discovery of information regarding the Suzuki Samurai, a different model sport utility vehicle manufactured prior to and after the introduction of the GEO Tracker. This court requested plaintiff to file an opinion from an expert verifying that the Tracker is sufficiently similar to the Suzuki Samurai that tests performed on the Samurai would be relevant in determining liability with respect to the Tracker. This court noted that the opinion should specify how useful such information would be and why the test results of the performance of the Samurai would be of any more help than the same type of results from any other vehicle manufactured by defendants.

In response to this request, plaintiff filed two affidavits. Both affidavits state, in conclusory fashion, that the requested discovery regarding the Samurai is directly relevant in proving the defects alleged by plaintiff. Neither affidavit specifies why the tests performed on the Samurai would be of any more help than the same results from any other vehicle. Anderson merely states that the two vehicles share the characteristics of a high center of gravity, short wheelbase, narrow track, lack of directional stability and a propensity to spin out of control. However, defendants refute that the Fracker and Samurai are substantially similar. Inoue stated by affidavit that the Tracker has a larger engine, higher center of gravity, longer

wheelbase, wider track, longer length and a greater width than the Samurai. Moreover, the Tracker is equipped with a different suspension system than the Samurai. The Tracker has McPherson Struts while the Samurai has leaf springs. This difference alone could render tests done on the Samurai irrelevant to the handling performance of the Tracker. Considering the numerous differences between the Tracker and Samurai, it appears that the requested discovery relating to the Samurai has little evidentiary value to the issue of whether the Tracker is defective. Thus, the requested discovery does not appear to be relevant to the subject matter involved in the pending action. Nor does it appear reasonably calculated to lead to the discovery of admissible evidence. Therefore, the Plaintiff's motion for discovery concerning the Samurai is denied.

Furthermore, as the court in *Rider* noted, allowing discovery of models that are not substantially similar to the model at issue is truly the equivalent of comparing apples and oranges where there are differences between the other models and the model at issue in terms of wheelbase, width, and center of gravity. Moreover, as the court in *Schaap* noted, only where the similar models have the same component parts or defects should discovery be allowed. There, only discovery relating to the same model was allowed. Here, the differences between the Tracker and Samurai make comparison between the two equivalent to comparing apples and oranges. The Track and Samurai have different wheelbases, widths and centers of gravity. Moreover, the Tracker and Samurai do not share the same components. The Tracker and Samurai have different suspension systems and dimensions. Therefore, discovery relating to the Samurai should not be allowed.

Similarly, the court in *Hofer* denied discovery of predecessor models where the models did not share pertinent characteristics with the product at issue. There, the court denied discovery of two different models where the models were dissimilar in design to the truck at issue. Here, the Tracker and Samurai do not share several pertinent characteristics: they have different suspension sys-

tems, different engines, different centers of gravity, different wheelbases, different tracks, different lengths and different widths.

Because of the many pertinent differences between the Samurai and the Tracker, the plaintiff's discovery request does not appear to be reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's discovery request is therefore denied.

### CONCLUSION

For the reasons set forth above, Plaintiff Piacenti's supplemental interrogatories and supplemental request for production concerning the Suzuki Samurai is hereby denied.

**SO ORDERED.**